# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TRINITY MEDICAL SERVICES, L.L.C.,
ET AL.**                                    **CIVIL ACTION**

**v.**                                      **NO. 17-592-JWD-EWD**

**MERGE HEALTHCARE SOLUTIONS,
INC.**

## RULING AND ORDER

This matter comes before the Court on *Defendant Merge's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (Doc. 6) filed by Defendant Merge Healthcare Solutions, Inc. ("Merge" or "Defendant"). Plaintiffs Trinity Medical Services, L.L.C. ("Trinity"), Performance Labs, LLC ("Performance"), and Prestige Worldwide Leasing, LLC ("Prestige") (collectively, "Plaintiffs") oppose the motion. (Doc. 8.) Defendant has filed a reply. (Doc. 9.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Defendant's motion is granted in part and denied in part.

## I.      Relevant Factual Background[1]

This suit arises out of an alleged software defect in an operating system sold and installed by Defendant. Trinity, Performance, and Prestige all performed toxicology testing services and related services in Louisiana. (Doc. 1-2 at 24.) Trinity operated a clinical laboratory in Mandeville, Louisiana, which specialized in clinical medication monitoring through toxicology testing. Performance is owned by Trinity and provided medication monitoring for patients using

---

[1] The following facts are drawn from the operative complaint ("First Amended Petition for Damages," Doc. 1-2 at 24-36) and are assumed to be true for purposes of this motion. *See e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)).

toxicology testing. (Doc. 1-2 at 25.) Trinity also owned Prestige, which provided employee leasing services and laboratory management services to clinical and toxicology laboratories located in Louisiana and Mississippi. (Doc. 1-2 at 25.)

The toxicology testing performed at these laboratories involved collecting biological samples from medical patients and testing those samples for chemicals, drugs, and toxins, which could affect those patients' medical treatment options. (Doc. 1-2 at 26.) Since patient outcomes are highly regulated by both industry regulations as well as federal and state laws and regulations, (Doc. 1-2 at 27), toxicology laboratories are concerned with using programs and operating systems that will meet the requirements to protect patient safety and data security. (Doc. 1-2 at 29.)

Merge is a developer and manufacturer of clinical laboratory software systems, including the Merge LIS[TM] software at issue in this case. (Doc. 1-2 at 24.) Plaintiffs allege that they expressly communicated to Merge that they required operating software that met the industry and legal requirements, which Merge allegedly confirmed its LIS[TM] software would provide. (Doc. 1-2 at 29.) Plaintiffs claim that Merge's representations about the software's reliability and security substantially influenced their decision to select Merge as their new operating platform provider. (Doc. 1-2 at 29-30.) Therefore, in January 2016, Plaintiffs contracted with Merge to purchase the LIS[TM] software, which was to be installed at all of Plaintiffs' toxicology laboratories in April 2016. (Doc. 1-2 at 30.)

However, prior to contracting with Plaintiffs, Merge allegedly became aware of a "software design" defect around March 2015. (Doc. 1-2 at 30-31.) Plaintiffs claim that the defect resulted in the LIS[TM] software creating "duplicate container numbers . . . for patients." (*Id.*) The Plaintiffs assert that the software created duplicate records for a single toxicology test, which

eventually could result in the software deleting both entries in error. (Doc. 1-2 at 31.) Plaintiffs

claim that this compromised laboratory reliability and testing accuracy because it increased the

risk that the testing laboratory would fail to perform the requested toxicology test. (*Id.*) Plaintiffs

allege that Merge never informed them of the software issue, either prior to installing the LIS<sup>TM</sup>

software or after installation, even though Merge recalled the software. (*Id.*)

In April 2016, Merge installed its Merge LIS<sup>TM</sup> software in Plaintiffs' toxicology

laboratories in both Louisiana and Mississippi. (Doc. 1-2 at 32.) Plaintiffs began using the LIS<sup>TM</sup>

software when it went "live" in late May 2016. (*Id.*) Plaintiffs allege that they "immediately"

noticed defects in the software, including the duplicate container defects along with others,

which made the software incompatible with meeting the law and regulatory requirements. (Doc.

1-2 at 32-33.)

Plaintiffs include a list of several alleged defects in the LISTM software including (but

not limited to): "lack of audit tracking defect," "user manual defect," "illegible comments

defect," "incorrect sample date defect," "no rejected samples defect," "re-preparation sample

limbo defect," "no disabled users defect," "rejected report defect," and "back-dating defect."

(Doc. 1-2 at 33.) Generally, Plaintiffs contend that these defects have the same effect as the

duplicate container issue, in that the defects compromise patient safety and data security. In

addition, Plaintiffs note that Merge failed to meet industry standards regarding security

protocols, resulting in a security defect that "would allow a party to access the user's system and

take, corrupt, or destroy the information contained in a customer's database." (*Id.*) As to this last

issue, Plaintiffs claim that Merge could easily resolve this security defect in a short amount of

time, but that Merge failed to correct the purported flaw. (Doc 1-2 at 33-34.)

Plaintiffs indicate that they notified Merge upon their discovery of the software defects,

which Merge was either "incapable of or unwilling" to resolve. (Doc. 1-2 at 34.) As a result,

Plaintiffs claim they acted in good faith and at their expense to create software "work-arounds"

that would make the LIS™ software compatible with laws and regulations. (*Id.*) Purportedly, the

software defects and the subsequent "work-arounds" proved to be such a financial and labor-

intensive expense that Plaintiffs were unable to return their laboratories to full capacity. (Doc. 1-

2 at 35.) Plaintiffs claim that they were eventually "forced" to close their Louisiana laboratories

and lost their management contracts for the Mississippi contracts due to the financial issues they

faced as a result of the Merge LIS™ software defects. (*Id.*)

Additionally, Plaintiffs contend that Merge was unable or unwilling to remedy the

software defects or collaborate with Plaintiffs to find a solution. (Doc. 1-2 at 36.) Plaintiffs assert

that they additionally warned Merge of the risk that the software defects posed to patient safety,

but that Merge failed to correct the software issues or inform other Merge LIS™ software users

of the deficiencies. (*Id.*)

## II.     Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader

is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47

(citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true)
> (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant
> evidence of each element of a claim. "Asking for [such] plausible grounds to infer
> [the element of a claim] *does not impose a probability requirement* at the pleading

stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III. Discussion

### A. Summary of Ruling

There are three issues raised by the Defendant's motion. First, Merge argues that Plaintiffs fail to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), Fifth Circuit,

and Louisiana jurisprudence. Second, Merge argues that Plaintiffs' Louisiana Unfair Trade Practices Act ("LUPTA") claims are perempted, under Louisiana jurisprudence interpreting La. R.S. § 51:1409(E), because Plaintiffs' claims originated from a January 2016 contractual relationship, which was perempted by the time Plaintiffs filed suit in April 2017. Third, Merge argues that all claims by Plaintiffs Performance and Prestige should be dismissed because Plaintiffs' petition does not sufficiently reference their alleged contracts with Merge in the petition.

In sum, the Defendant's motion shall be granted in part and denied in part. First, the Court finds that Plaintiffs' failed to plead fraud with particularity and grants Defendant's motion with respect to this issue. Second, the Court does not agree that Plaintiffs' LUPTA claims are untimely, particularly in light of the Louisiana Legislature's recent revisions to La. R.S. § 51:1409(E). Plaintiffs have a persuasive argument that their claims have not prescribed due to the *contra non valentem* discovery rule doctrine. Thus, this portion of Defendant's motion is denied. Third, the Court finds that Plaintiffs Performance and Prestige have not stated a claim. Plaintiffs' petition does not sufficiently reference the documents attached as exhibits to Plaintiffs' memorandum. These documents are not referenced in the Plaintiffs' petition and are not central to the Plaintiffs' claims, and since the Plaintiffs have not otherwise sufficiently alleged Merge's duty to Plaintiffs Performance and Prestige, the Defendant's motion to dismiss regarding these claims is granted. However, with respect to the first and third issues, the Court will grant leave for the Plaintiffs to amend their complaint to cure the deficiencies.

### B. Pleading Fraud with Particularity

### 1. Defendant's Argument (Doc. 6-1 and 9)

### a. Affirmative Misrepresentations

Defendant argues that Plaintiffs' fraud claims should be dismissed for failure to plead

with sufficient particularity under Federal Rule of Civil Procedure 9(b) and related jurisprudence. (Doc. 6-1 at 6.) According to the Defendant, Plaintiffs' allegations that Merge achieved a contractual relationship with them through fraud do not meet those requirements because Plaintiffs only broadly allege that Merge "intentionally misrepresented the testing procedures, accuracy of laboratory testing results, and security of patient data (among others)," which "substantially induced Plaintiffs' decision to contract with Merge for the purchase, installation, and ongoing maintenance of the Merge LIS™ software operating system." (Doc. 6-1 at 8 (quoting Doc. 1-2 at 37).)

Defendant contends that Plaintiffs' allegations do not provide them with sufficient notice of the alleged fraud because Plaintiffs "fail to specify the statements contended to be fraudulent, fail to identify the speaker of the fraudulent statements, and fail to state when and where the statements were made." (Doc. 6-1 at 8 (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008); *Palmer Ventures, LLC*, No. 04-706, 2008 WL 11351623, at *2 (M.D. La. Apr. 29, 2008)).)  Instead, Defendant indicates that Plaintiffs' petition only alleges that Plaintiffs spoke with an anonymous Merge representative, in mid-2015, and that Merge assured Plaintiffs its software would meet Plaintiffs' expectations and satisfy the regulatory and legal requirements (the alleged misrepresentation). As a result, Defendant argues the Plaintiffs' petition fails to meet the requirements of laying out specifically the "who, what, when, [and] where" of the alleged fraud as required by the Fifth Circuit's interpretation of Federal Rule of Civil Procedure 9(b). (Doc. 6-1 at 9 (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)); Doc. 9 at 2.)

### b.  Fraud by Omission

Again, Defendant claims that Plaintiffs' allegations of fraud by omission did not put them

on sufficient notice of the specific circumstances of the fraud allegations. (Doc. 9 at 2.) Defendant argues that Plaintiffs should have alleged the names of the person(s) omitting information as well as more details surrounding the alleged omissions. (*Id.* (citing *Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216-17 (E.D. La. 1990).) Defendant reiterates its argument as to Federal Rule of Civil Procedure 9(b) requiring the "who, what, when, and where" and further argues that this requirement extends to fraud by omission cases. (Doc. 9 at 3.) Additionally, Defendant asserts that Plaintiffs who claim fraud by omission must also plead that defendant had a duty to disclose under Louisiana law. (Doc. 9 at 3 (citing *Mose v. Keybank Nat'l Ass'n*, 464 F. App'x 260, 261-62 (5th Cir. 2012) (citing *Greene v. Gulf Coast Bank*, 593 So. 2d 630 (La. 1992)); *First Am. Bankcard, Inc. v. Smart Bus. Tech.*, 178 F. Supp. 3d 390, 401-402 (E.D. La. 2016); *Kedlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008)).)

### 2. Plaintiffs' Argument (Doc. 8)

#### a. Affirmative Misrepresentations

Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 8) does not provide an argument as to whether Plaintiffs' petition sufficiently plead fraud by affirmative misrepresentations under Federal Rule of Civil Procedure 9(b). Instead, Plaintiffs only argue that their petition sufficiently plead fraud by omission. (Doc. 8 at 5-8.)

#### b. Fraud by Omission

Plaintiffs claim that their petition sufficiently alleges Defendant's fraud by omission. (Doc. 8 at 6.) Plaintiffs assert that alleging fraud by omission does not require as rigid a standard as pleading fraud by affirmative misrepresentations, and that their petition meets this lower standard. (*See* Doc. 8, p. 6-7 (citing *Howard v. Louisiana Citizens Prop. Ins. Corp.*, 65 So. 3d 697, 704 (La. App. 4 Cir. 2011) (citing *Shelton v. Standard/700 Associates*, 798 So. 2d 60, 64 (La. 2001));

*Douglass v. Renola Equity Fund II, LLC*, No. 13-6192, 2014 QL 1050851, at *6 (E.D. La. Mar. 14, 2014); *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1277-78 (D. Colo. 2006)).

Therefore, Plaintiffs argue that since their allegations establish all the required elements of fraud by omissions, Merge's motion should be denied. In the alternative, Plaintiffs request the Court's leave to amend the petition and add specificity. (Doc. 8 at 7.)

### 3. Legal Standard

Generally, a plaintiff's complaint will survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the complaint plausibly states a claim for relief, assuming its factual allegations are true. *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016) (citing *Ashcroft*, 556 U.S. at 678); *see also*, *Bell Atlantic*, 550 U.S. at 570. However, when the complaint involves a fraud allegation, Federal Rule of Civil Procedure 9(b) requires a higher pleading standard.

Specifically, the plaintiff must plead "with particularity the circumstances constituting fraud."[2] Fed. R. Civ. Pro. 9(b). The Fifth Circuit has interpreted Federal Rule of Civil Procedure 9(b) "strictly[,] requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). In short, plaintiffs must plead enough facts to illustrate "'the who, what, when, where, why and how' of the alleged fraud." *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting

---

[2] The full text of Federal Rule of Civil Procedure 9(b) is as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

However, fraud by omission claims are by nature difficult to plead with particularity. *First Am. Bankcard*, 178 F. Supp. 3d at 402. The Fifth Circuit has adopted a somewhat more relaxed standard for such cases: "'In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F. 3d 370, 381 (5th Cir. 2004)).

Additionally, under Louisiana law, claims of fraud by silence or omission first require a duty to disclose. There is no general duty to disclose in Louisiana law, but there may be a duty to disclose when there is a fiduciary relationship between the parties. *First Am. Bankcard*, 178 F. Supp. 3d at 401. A fiduciary relationship is a relationship where "confidence is reposed on one side and there is resulting superiority and influence on the other." The defining characteristic in a fiduciary relationship "is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Plaquemines Parish Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034, 1040 (La. 1987). Louisiana courts tend to recognize a duty to speak in situations where the "failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *First Am. Bankcard*, 178 F. Supp. 3d at 401 (quoting *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383 (La. 1990)).

### 4. Analysis

#### a. Affirmative Misrepresentations

The Court finds that Plaintiffs plead Defendant made affirmative misrepresentations, but the Court also finds that Plaintiffs' petition does not allege sufficient facts to meet the heightened particularity requirements of Federal Rule of Civil Procedure 9(b).

First, Plaintiffs' petition does attempt to make a claim for affirmative misrepresentations. The pertinent language from the Plaintiffs' First Amended Petition is as follows: "Merge *intentionally misrepresented* the LIS™ software's capabilities and failed to inform Plaintiffs of the known Duplicate Container Defect and the recall in a successful effort to execute a contractual relationship with Plaintiffs, thus binding Plaintiffs to continue doing business with Merge . . . ." (emphasis added). (Doc. 1-2 at 37.) Plaintiffs additionally specify that the affirmative misrepresentations include misrepresentations about the accuracy of laboratory testing procedures, testing results, and the security of patient data, among others. (*Id.*) Therefore, Plaintiffs' contention in their memorandum that their petition only alleges fraud by omission is inaccurate. The petition alleges *both* fraud by affirmative misrepresentations *and* fraud by omission.

Second, Plaintiffs' fraudulent misrepresentation allegations do not meet the particularity requirements of Federal Rule of Civil Procedure 9(b). While Plaintiffs have indicated which statements they contend are fraudulent and why (namely, purported statements about the LIS™ software's reliability, accuracy, and security for laboratory testing), (Doc. 1-2 at 37), the Plaintiffs have not specified the "when, where, or who" with regard to these statements, as required by the Fifth Circuit jurisprudence. *See Williams*, 417 F.3d at 453 (quoting *United States ex rel. Thompson*, 125 F.3d at 903); *Flaherty*, 565 F.3d at 207 (quoting *Williams*, 112 F.3d at 177); *Nathenson*, 267 F.3d at 412. Plaintiffs have plead that Merge made affirmative misrepresentations, but have not

specified who or which Merge employee or representative made those misrepresentations. Plaintiffs also have not clearly indicated a time or location where these misrepresentations occurred.

In conclusion, the Court agrees with Defendant's contention that Plaintiffs have not plead fraud with particularity, in relation to Plaintiffs' allegations that Defendant made affirmative misrepresentations. Plaintiffs' claims alleging Defendant's fraudulent misrepresentation should therefore be dismissed. However, as will be explained further below, the Court will grant Plaintiffs leave to amend their petition to cure the deficiencies.

### b. Fraud by Omission

Plaintiffs' petition also alleges Defendant's fraud by omission. (Doc. 1-2 at 37.) In short, the Court agrees with Defendant that Plaintiffs have failed to allege fraud by omission with particularity.

Plaintiff is correct that the Fifth Circuit evaluates fraud by omission claims under a more relaxed standard than fraudulent misrepresentation claims. *See Carroll*, 470 F.3d at 1174 (quoting *United States ex rel. Riley*, 355 F.3d at 381). Under the Fifth Circuit's requirements for pleading fraud by omission, Plaintiffs must allege the types of facts omitted, the place where the omissions should have appeared and the way in which the omitted facts made the representation misleading. *See id.* Here, Plaintiffs' petition does allege the types of facts omitted—specifically, that Defendant failed to inform Plaintiffs of the known duplicate container defect in the Merge LIS™ software as well as failing to inform Plaintiffs about the recall. (Doc. 1-2 at 37.) Likewise, the petition does allege the manner in which the omitted facts made the representation misleading. The petition asserts that the omissions "substantially influenced Plaintiffs' decision to contract with Merge for the purchase, installation, and ongoing maintenance of the Merge LIS™ software operating

system." (*Id.*) However, the petition does not state the place where the omissions should have appeared.

Furthermore, even if Plaintiffs petition is stretched to meet the requirements of pleading fraud by omission under Fifth Circuit jurisprudence, Defendant is correct to note that Plaintiffs' petition fails to plead that Defendant had a duty to disclose the defects pursuant to the requirements under Louisiana jurisprudence *First Am. Bankcard*, 178 F. Supp. 3d at 401. Since alleging that Defendant had a general duty to disclose will not suffice, and because Plaintiffs do not argue that Defendant was in a special relationship with Plaintiffs (as in the case of fiduciary relationships), Plaintiffs have failed to plead this requirement as well. *See id.*

In sum, Plaintiffs have not plead fraud by omission within their petition. Therefore, Defendant's motion to dismiss with regard to these allegations is also granted. Nevertheless, the Court will grant leave to amend to cure the deficiencies.

### C. Prescription or Peremption of LUPTA Claims

#### 1. Defendant's Argument (Doc. 6-1 and Doc. 9)

Defendant generally argues that Plaintiffs' LUPTA claim should be dismissed because it is untimely. (Doc. 6-1 at 9.) Specifically, Defendant claims that Plaintiffs' LUPTA claim is perempted because Plaintiff potential LUPTA claims would have arisen in January 2016 with the formation of the parties' contractual relationships. (Doc. 9 at 3.)

Additionally, Defendant argues that the time limit imposed by La. R.S. § 51:1409(E) is a peremptive period, which means that the equitable doctrine of *contra non valentem* does not apply. (Doc. 9 at 9 (citing *Abene v. Jaybor*, 802 F. Supp. 2d 716, 722 (E.D. La. 2011); *Reese v. ICF Emergency Mgmt. Servs., Inc.*, 684 F. Supp. 2d 793, 801 (M.D. La. 2010)).)

Defendant contends that any conduct by Merge after the contractual relationship began was

ancillary to that contractual relationship. (Doc. 6-1 at 10-11.) Therefore, the "acts" which gave rise to the cause of action were "Merge's alleged omissions in pursuit of a contractual relationship with Plaintiffs." (Doc. 6-1 at 10.) Second, Defendant argues that any effects of the contractual relationship are simply a continuation of Merge's alleged initial failure to disclose the defect. Such effects or tangential conduct cannot interrupt prescription. (Doc. 6-1 at 11; Doc. 9 at 4 (citing *Miller v. Conagra*, 991 So. 2d 445, 455-56 (La. 2008)).)

### 2. Plaintiffs' Argument (Doc. 8)

Plaintiffs essentially argue that their LUPTA claim is not perempted because the Defendant's unlawful "act" (i.e., of installing the software no earlier than April 20, 2016) occurred within one year of Plaintiffs' suit. (Doc. 8 at 8.) Plaintiffs distinguish between the statutory language pertaining to the unlawful "transaction" (here, which would be Plaintiffs' contract(s) with Merge to install the software) and the "act" (here, of installing the software).[3] (Doc. 8 at 8.)

Plaintiffs argue that with regard to the LUPTA claim, they are alleging that Defendant's harmful conduct of installing the software is the basis for their claim, rather than any contract between the parties giving rise to the claim. (Doc. 8 at 8.) Since Defendant's harmful conduct giving rise to the LUPTA claims occurred in April at the earlier, rather than January when Plaintiffs contracted with Merge, Plaintiffs contend that their LUPTA claim is timely. (Doc. 8 at p. 8-9.)

Alternatively, Plaintiffs assert that the discovery rule of *contra non valentem* applies, making Plaintiffs' claim timely even if the original basis for their LUPTA claim was the contractual relationship with Merge. (Doc. 8 at 9 n.16.) In short, Plaintiffs contend that they did not discover and could not have discovered through reasonable diligence the basis for the LUPTA claim until after May 2016, when the Merge LIS™ operating system went "live" and the defects

---

[3] The relevant portion of La. R.S. § 51:1409(E) is that an unfair trade practices claim "shall be prescribed by one year running from the time of the *transaction or act* which gave rise to this right of action" (emphasis added).

became apparent. (*Id.*)

### 3. Legal Standard

Classification of the time period imposed on LUPTA claims as a peremptive period instead of a prescriptive period is significant because prescriptive periods may be extended by doctrinal devices, such as *contra non valentem* and the "continuing tort" theory. According to La. R.S. § 51:1409(E), there is a one year prescriptive period on LUPTA claims.[4] However, this statute has been interpreted by several Louisiana courts as imposing a peremptive period. *See e.g.*, *Glod v. Baker*, 899 So. 2d 642 (La. App. 3 Cir. 2005); *Capital House Pres. Co. v. Perryman Consultants, Inc.*, 725 So. 2d 523 (La. App. 1 Cir. 1998); *Canal Marine Supply, Inc. v. Outboard Marine Corp. of Waukegan, Ill.*, 522 So. 2d 1201 (La. App. 4 Cir. 1988). This interpretation of La. R.S. § 51:1409(E) originates in much older case law holding that if a statute creating a right also provides the time period for that right to be exercised, the period is considered a peremptive one. *See Guillory v. Avoyelles R.R. Co.*, 28 So. 899 (La. 1901).

The Louisiana Legislature has recently revised La. R.S. § 51:1409(E), effective August 1, 2018, to read as follows: "The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action." 2018 La. Sess. Law Serv. Act 337 (H.B. 759) (West). The change may be an attempt to resolve and clarify the peremptive versus prescriptive dispute among Louisiana courts regarding this statute, which the Louisiana Supreme Court previously declined to resolve in *Miller*, 991 So. 2d at 456.

If the time limit imposed by the statute is, in fact, a peremptive period, the doctrine of *contra non valentem* does not apply to LUPTA claims. *See Reese*, 684 F. Supp. 2d at 801;

---

[4] The full text of La. R.S. § 51:1409(E) is: "The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."

*Dominion Expl. & Prod., Inc. v. Waters*, 972 So. 2d 350, 362 (La. App. 4 Cir. 2007). On the other hand, if the time limit imposed by La. R.S. § 51:1409(E) is a prescriptive period, as the statute itself indicates (and as the recent legislative changes to this statute indicate), then the doctrine of *contra non valentem* would apply to LUPTA claims.

With regard to prescriptive periods, the doctrine of *contra non valentem* includes a "discovery rule," which stipulates that prescription does not begin to run until the injured party discovers or should have discovered the facts upon which the cause of action is based through reasonable diligence. *See Allstate Ins. Co. v. Fred's Inc.*, 18 So. 3d 172, 178 (La. App. 2 Cir. 2009), *rev'd*, 25 So. 3d 821 (La. 2010) (holding that the Second Circuit erroneously found that the doctrine of *contra non valentem* applied to the facts of the case because the record of the plaintiff's actions indicated a lack of diligence, which should have precluded the Second Circuit from applying the doctrine).

Additionally, the prescriptive period may be delayed by a "continuing tort" theory. Under this theory, when the cause of the plaintiff's injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct which caused the damages ends. *See Crump v. Sabine River Auth.*, 737 So. 2d 720, 726 (La. 1999); *Bustamento v. Tucker,* 607 So. 2d 532, 543 n.8 (La. 1992); *Reese*, 684 F. Supp. 2d at 802. In other words, "'[a] continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original wrongful act.'" *Miller*, 991 So. 2d at 456 (citing *Crump*, 737 So. 2d at 728).

### 4. Analysis

As a preliminary matter, the Court finds that La. R.S. § 51:1409(E) contemplates a prescriptive period. Consequently, the Court agrees that the equitable doctrine of *contra non valentem* applies to Plaintiffs' LUPTA claims.

Because the change to La. R.S. § 51:1409(E) is only recently effective, and the amendment does not indicate expressly whether the statute applies retroactively, the Court must consider whether the amended statute should apply retroactively. Louisiana Civil Code art. 6 indicates that laws which are procedural in nature apply both prospectively and retroactively, unless there is a legislative expression to the contrary. *See also Jacobs v. City of Bunkie*, 737 So. 2d 14 (La. 1999).

The Fifth Circuit and the Louisiana Supreme Court have noted that, in Louisiana, prescriptive periods are generally treated as procedural laws. *See e.g.*, *Holt v. State Farm Fire and Cas. Co.*, 627 F.3d 188, 192 (5th Cir. 2010) (citing *Chance v. Am. Honda Motor Co.*, 635 So. 2d 177, 178 (La. 1994); *see also Lott v. Haley*, 370 So, 2d 521, 523 (La. 1979). Prescriptive periods are considered remedial, or procedural, in nature, and therefore are generally accorded retroactive application. *See Ebinger v. Venus Const. Corp.*, 65 So. 3d 1279, 1285 (La. 2011) (citing *Lott*, 370 So. 2d at 523)). However, there are two exceptions to this general rule. First, when the retroactive application would "strip a party of a vested right," or second, when retroactive application would "revive an already prescribed cause of action." *Holt*, 327 F.3d at 193 (citing *Lott*, 370 So. 2d at 523-24).

Here, neither of the exceptions to the general rule of retroactivity apply. First, Plaintiffs would not be stripped of a vested right by retroactive application of the statute. The changes to the statute merely clarify the old law rather than change it substantively. Second, the retroactive application of La. R.S. § 51:1409(E) would not revive an already prescribed cause of action. Under both the plain and revised statutory language, Plaintiffs' LUPTA claims would not have prescribed. The new statutory language does not change the prescriptive period at issue in this case; instead, it simply reiterates that the time period at issue is a liberative prescriptive period rather than a peremptive period (as the old statute had been construed in spite of its plain

language).[5] Thus, the general rule of retroactive application for statutes contemplating prescriptive periods is appropriate in this case. As a result, the analysis of the retroactivity of the amended statute weighs heavily in favor of considering the time period as a prescriptive one. Therefore, the Court finds that La. R.S. § 51:1409(E) contemplates a one-year prescriptive period.

Consequently, the Court finds that Plaintiffs LUPTA claims have not prescribed under La. R.S. § 51:1409(E) due to the applicability of the discovery rule doctrine of *contra non valentem*. Even if the basis for Plaintiffs' LUPTA claims arose out of Plaintiffs' contractual relationships with Merge, Plaintiffs did not discover the defect until after the software had been installed and went "live," which occurred at a later time and would make Plaintiffs allegations timely. Defendants have not argued that Plaintiffs could have discovered the defect through reasonable diligence, which could potentially defeat Plaintiffs discovery rule argument. As such, the Court agrees with Plaintiffs that they could not have discovered the defect through reasonable diligence, and that their LUPTA claim is timely.[6]

In short, the Court finds that La. R.S. § 51:1409(E) imposes a prescriptive period, which allows for the applicability of the discovery rule doctrine of *contra non valentem* with regard to Plaintiffs' LUPTA claims. Thus, the Court denies Defendant's motion to dismiss as to the

---

[5] In a recent case, this Court noted that in the context of Louisiana law, the Court must follow the civilian method. *Jorge-Chevales v. La. Farm Bureau Cas. Ins. Co.*, 307 F. Supp. 3d 535, 549 (M.D. La. 2018). Pursuant to civilian methodologies, jurisprudence is considered a secondary source of law, and the federal court is not bound by Louisiana appellate court opinions. *Id.* In Louisiana, the primary source of law is legislation (i.e., the state's Constitution, statutes, and codes). *See American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (citing *Prytania Park Hotel, Ltd. V. General Star Indem.*, 179 F.3d 169, 175 (5th Cir. 1999)). Jurisprudence, even that which rises to the level of *jurisprudence constante*, is merely a secondary source of law. *See id.* (citing *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992) (quoting Albert Tate, Jr., *Techniques of Judicial Interpretation in Louisiana*, 22 La. L. Rev. 727 (1962)). Accordingly, civilian methodology requires examination of primary sources prior to relying on lower court jurisprudence. *See id*; *Jorge-Chevales*, 307 F. Supp. 3d at 549.

[6] While Plaintiffs make a compelling and persuasive argument that the "continuing tort" theory applies, the Court need not reach the issue because the Court finds that the doctrine of *contra non valentem* applies to Plaintiffs' LUPTA claims.

untimeliness of Plaintiffs' LUPTA claims.[7]

### D. Performance and Prestige's Claims

#### 1. Defendant's Argument (Doc. 9)

Defendant originally argued that all claims brought by Plaintiffs Performance and Prestige should be dismissed because the petition did not allege that these parties contracted with Merge. (Doc. 6-1 at 11-14.)

#### 2. Plaintiffs' Argument (Doc. 8)

Plaintiffs argue that their petition does reference contracts between Merge and Plaintiffs Performance and Prestige, pointing to the "January 2016 sales contract . . . and all ensuing contracts between Plaintiffs and Merge" language. (Doc. 8 at 9 (citing Doc. 1-2 at 37).) Plaintiffs assert that the "ensuing contract" language is sufficient indication of the alleged existence of contractual relationship among the parties in this dispute to incorporate the Exhibits indicating such relationship, (Doc. 8 at 9 n.17), because these additional contracts are shown by the emails and invoices attached as Exhibits in support of Plaintiffs' memorandum. (Doc. 8 at 9.)

Alternatively, Plaintiffs argue that Plaintiffs Performance and Prestige can still pursue negligence claims, fraud, and LUPTA claims against Merge because those claims are founded upon Merge's legal duty to inform Performance and Prestige of the known software defects (i.e., a duty to disclose). (Doc. 8 at 9-10.)

---

[7] Nevertheless, the Court notes that, even if La. R.S. § 51:1409(E) contemplated a peremptive period rather than a prescriptive period, Defendant's motion to dismiss Plaintiffs' LUPTA claims would still be denied. The plain language of the statute provides that a LUPTA claim "shall be prescribed by one year running from the time of the *transaction or act* which gave rise to this right of action." La. R.S. § 51:1409(E) (emphasis added). As Plaintiffs correctly argue, the Defendant's unlawful "act" (i.e., installing the software no earlier than April 20, 2016) occurred within one year of Plaintiffs' suit. Such an interpretation of La. R.S. § 51:1409(E) is appropriate considering that "[u]nder Louisiana law, both prescriptive and peremptive statutes are to be strictly construed in favor of maintaining the claim that is said to be extinguished." *Reggio v. Reggio*, 14-493 (La. App. 5 Cir. 12/16/14); 166 So.3d 290, 296. Thus, for this additional reason, Defendant's motion to dismiss Plaintiffs' LUPTA claims is denied.

### 3. Defendant's Reply (Doc. 9)

According to Defendant, the Plaintiffs' petition only clearly references the January 2016 contract between Trinity and Merge. (Doc. 9 at 4.) The only other contracts that the petition mentions are "all ensuing contracts" between the Plaintiffs and Merge. (Doc. 9 at 5 (citing Doc. 1-2 at 37).) Defendant argues that this vague reference to other contracts is not sufficient to show that such contracts are central to the basis of Plaintiffs' claims. Thus, Plaintiffs should not be allowed to incorporate by reference the Exhibits attached to their memorandum because those exhibits were not central to the contract mentioned in the petition and were not specifically referenced in the petition. (Doc. 9 at 5.)

In addition, Defendant notes that these Exhibits are not clearly the aforementioned "ensuing contracts," since A and B predate the January 2016 contract and C and D are invoices (one of which is addressed to Trinity, not Prestige or Performance). Therefore, Defendant argues that Plaintiff fails to state claims for relief with regard to Performance and Prestige. (Doc. 9 at 5.)

### 4. Consideration of Exhibits

The first issue the Court must resolve is whether to consider the exhibits attached to Plaintiffs' opposition memorandum. In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,] ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this ostensibly ironclad standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 14-11300, 2018 WL 2943339, at *3 (5th Cir. June 12, 2018)

(citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey*, 540 F.3d at 338) (citations and internal quotation marks omitted)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c) ] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 Fed. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

Here, the Court is not relying on materials such as affidavits in the record. Additionally, for the reasons further delineated below, the Court will not consider the attached exhibits in Plaintiffs' Memorandum (Doc. 8) or the exhibit attached to Plaintiffs' Motion to Withdraw and Substitute Exhibit (Doc. 21) because they fail to meet the Fifth Circuit standard. Thus, because the Court finds that these documents were not referenced in the Plaintiffs' complaint, the Court does

not need to consider the exhibits in order to decide the present motion. As such, the Court need not convert the 12(b)(6) motion into a motion for summary judgment.

### 5. Analysis

As a preliminary matter, the Court notes that the subject of Plaintiffs' Motion to Withdraw and Substitute Exhibit (Doc. 21) is not dispositive in resolving this issue. Plaintiffs sought to withdraw Exhibit C (Doc. 8-3) after Merge informed the Plaintiffs of a discrepancy between the laboratory listed on the invoice and Plaintiff Performance in this case (the discrepancy appears to be that one Performance Laboratories is "LLC" and the other "L.L.C."). (Doc. 21 at 2.) The new exhibit would not sufficiently change the arguments addressed by the parties in their prior motions as the potential new and substituted exhibit provides the same support of showing that Plaintiff Performance contracted with Merge.

Although this Court has the discretion to incorporate Plaintiffs' exhibits by reference into the complaint, the Court agrees with Defendant's argument that Plaintiffs' petition does not sufficiently reference the documents contained in the exhibit to make them "central" to the Plaintiffs' claim. *See Werner*, 441 Fed. App'x. at 248; *Scanlan*, 343 F.3d at 536; *Collins*, 224 F.3d at 498-99. The Court agrees that the only reference in Plaintiffs' complaint to any contracts between Plaintiffs Performance and Prestige and the Defendant is the reference to "all ensuing contracts." (Doc. 1-2 at 37.) Under the Fifth Circuit standard, such documents are only admissible when they are referred to in the plaintiffs' complaint and are central to the plaintiffs' claims. *See id.* Here, as Defendant points out, the "reference" in Plaintiffs' petition is vague at best, and further, the documents attached as exhibits are not clearly "central" to Plaintiffs' claim. Thus, it is not clear that the documents contained in Plaintiffs' exhibits attached to their memorandum were referenced in Plaintiffs' complaint at all.

Of the documents submitted to the Court, only Exhibit C, which is an invoice to Performance, could even arguably satisfy the standard. But, given the discrepancy noted above, and given the fact that Plaintiffs sought to withdraw Exhibit C, the Court believes that the best course is to vacate part of its prior ruling on Plaintiffs' Motion to Withdraw and Substitute Exhibit (Doc. 21) and allow Plaintiffs to withdraw Exhibit C. Although granting the proposed substitution would not have changed the court's ruling on this issue, in vacating part of its prior ruling, the Court acknowledges that no documents currently support Plaintiffs' claims.

In addition, the Court notes that Plaintiffs make a compelling argument that Performance and Prestige can still pursue negligence claims, fraud, and LUPTA claims against Merge because those claims are founded upon Merge's legal duty to inform Performance and Prestige of the known software defects. However, as previously indicated, the Plaintiffs have not sufficiently plead that Merge had a duty to disclose.

Therefore, the Court grants Defendant's motion to dismiss with respect to the claims by Prestige and Performance against Merge. However, the Court grants Plaintiffs leave to amend their petition. This will allow Plaintiffs the opportunity to plead a contractual relationship between Prestige and Performance and Merge, if Plaintiffs have a good faith basis for doing so.

### E.  Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, the Plaintiffs requested in their opposition memorandum leave to amend their complaint to cure any deficiencies. (Doc. 8 at 10.) The Court will act in accordance with the "wise judicial practice" and general rule and grant the Plaintiffs' request.

Nevertheless, the Court cautions Plaintiffs of their obligations under Rule 11 of the Federal Rules of Civil Procedure. By submitting an amended complaint to the Court, counsel for the Plaintiffs is certifying that, to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[] . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). While the Court has no reason to doubt Plaintiffs' compliance with this rule, the Court nevertheless reminds Plaintiffs of their obligation.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that *Defendant Merge's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (Doc. 6) is **GRANTED IN PART and DENIED IN PART**.

Plaintiffs' fraud claim against Merge is **DISMISSED WITHOUT PREJUDICE,** and leave to amend is granted for this claim. Additionally, Plaintiffs Performance and Prestige's claims against Merge are **DISMISSED WITHOUT PREJUDICE**, and leave to amend is also granted for these claims. Plaintiffs shall have twenty-eight (28) days in which to cure the deficiencies for these claims. If the Plaintiffs fail to do so, these claims against Merge will be dismissed with prejudice.

In all other respects, Merge's motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>August 7, 2018</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**