UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| TRINITY MEDICAL SERVICES, LLC, PERFORMANCE LABS, LLC, AND PRESTIGE HEALTHCARE SOLUTIONS, LLC | * <br> * CIVIL ACTION NO. 3:17-00592-JWD-EWD <br> * <br> * <br> * JUDGE DEGRAVELLES |
| VERSUS | * <br> * |
| MERGE HEALTHCARE SOLUTIONS, INC. | * MAGISTRATE JUDGE WILDER-DOOMES <br> * <br> * |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MERGE HEALTHCARE SOLUTIONS, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS CLAIMS BROUGHT BY PLAINTIFFS
PERFORMANCE LABS, LLC AND PRESTIGE HEALTHCARE SOLUTIONS, LLC**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Merge Healthcare Solutions, Inc. ("Merge") submits this memorandum in support of its motion to dismiss the claims brought by plaintiffs Performance Labs, LLC ("Performance") and Prestige Healthcare Solutions, LLC ("Prestige"). As more fully explained below, Merge contracted with only plaintiff Trinity Medical Services, LLC ("Trinity"), and despite being afforded the opportunity to amend, the Second Amended Petition still does not assert any actionable claims by plaintiffs Performance or Prestige.

**PRELIMINARY STATEMENT**

Trinity, Performance and Prestige (together, "Plaintiffs") are three separate entities that perform toxicology testing and related services. This suit arises out of an allegedly defective laboratory operating system software that Merge developed and licensed to one of the Plaintiffs—Trinity—pursuant to a January 11, 2016 Sales Order (hereinafter, the "Sales Contract"). Because neither Performance nor Prestige are parties to the Sales Contract, the Court previously granted

Merge's motion to dismiss their claims, but allowed them "the opportunity to plead a contractual relationship between Prestige and Performance and Merge, if Plaintiffs have a good faith basis for doing so."[1] The Court also held Plaintiffs failed to allege any facts that could support the existence of a duty of disclosure owed by Merge to Performance or Prestige, but allowed Plaintiffs the chance to cure that deficiency as well.[2]

Plaintiffs thereafter filed a Second Amended Petition, but failed both to identify any contract to which Performance or Prestige are parties, or to allege any facts that could give rise to any duty to disclose owed by Merge to Performance or Prestige. The absence of any contract is fatal to the first and second causes of action asserted by Performance and Prestige for redhibition and rescission of contract, because those claims hinge upon the existence of such a contract. What is more, Plaintiffs do not allege any communications by Merge directly to Performance or Prestige, much less any alleged misrepresentations or omissions directed to Performance or Prestige, that could support their third, fourth or fifth causes of action for negligence, negligent misrepresentation, and violation of Louisiana's Unfair Trade Practices Act ("LUTPA"). Neither does the Second Amended Petition allege that Performance or Prestige relied upon any purported representations by Merge; it is undisputed that Trinity is the only party that purchased the software from Merge. Lastly, the Second Amended Petition falls woefully short of establishing that Performance or Prestige are third party beneficiaries of the Sales Contract between Trinity and Merge, as the Sales Contract does not mention Performance or Prestige, or identify what, if any, benefit they purportedly are owed. As a result, and as discussed in more detail below, all claims brought by Performance and Prestige should be dismissed with prejudice.

---

[1]    Rec. Doc. 35, p. 23.

[2]    *Id.* at p. 23.

## BACKGROUND[3]

Merge develops, sells, installs, and services its laboratory information system ("LIS") software, which is operational software for clinical laboratories that provide toxicology testing services.[4] Plaintiff Trinity operated a clinical laboratory in Mandeville, Louisiana.[5] Trinity's wholly owned subsidiary, Performance, allegedly provided medication monitoring at Trinity's lab.[6] Trinity also wholly owned Prestige, which purportedly provided employee leasing and management services to Trinity.[7]

According to Plaintiffs, all three entities—Trinity, Performance and Prestige—began searching for new laboratory information system software in mid-2015.[8] Plaintiffs allege that Merge's representations "substantially influenced" their decision in selecting a new software system and "induced" Plaintiffs to purchase Merge's LIS™ software, but that certain information was misrepresented and that Merge failed to disclose alleged defects in the software, including an alleged "Duplicate Container Defect."[9] Despite Plaintiffs' claim that all three entities were "induced" to purchase Merge's LIS™ software, it is undisputed that only Trinity contracted with Merge to purchase the LIS™ software in January 2016.[10] After Merge's LIS™ software went "live," certain alleged defects purportedly were discovered in the software.[11] Based on these

---

[3]   The following facts are accepted as true for purposes of this motion only.

[4]   Rec. Doc. 38, p. 7 ¶¶ 18-22.

[5]   *Id.* at p. 3, ¶ 1.

[6]   *Id.* at p. 3, ¶ 2.

[7]   *Id.* at p. 3, ¶ 3.

[8]   *Id.* at p. 8, ¶¶ 24-25.

[9]   *Id.* at p. 9, ¶ 32.

[10]  *Id.* at p. 20, ¶ 66.

[11]  *Id.* at p. 22, ¶ 75.

allegations, Plaintiffs' First Amended Petition asserted causes of action for redhibition, rescission of contract for fraud, negligence, and violation of Louisiana's Unfair Trade Practices Act ("LUTPA").[12]

Merge moved to dismiss certain of Plaintiffs' claims, and in a recent ruling, the Court concluded in relevant part, that (i) Plaintiffs failed to allege fraud with sufficient particularity;[13] and (ii) Performance and Prestige failed to state any claims because they lacked a contractual relationship with Merge, and because Merge did not owe them any duty of disclosure.[14] This Court allowed Plaintiffs to amend their petition to cure these deficiencies and afforded Plaintiffs the "opportunity to plead a contractual relationship between Prestige and Performance and Merge, if Plaintiffs have a good faith basis for doing so."[15] The Court also cautioned that under Rule 11, Plaintiffs are obligated to certify that the claims and legal contentions in any amendment are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing extending law.[16]

Plaintiffs thereafter filed their Second Amended Petition, which re-asserts the previous causes of action for redhibition, rescission of contract for fraud, negligence, and violation of LUTPA on behalf of all Plaintiffs, and adds a claim of negligent misrepresentation by all Plaintiffs.[17] The Second Amended Petition also includes additional detail purporting to support

---

[12]   Rec. Doc. 1-1. Plaintiffs' original petition was never served, and Merge removed this case after being served with Plaintiffs' First Amended Petition. *Id.*

[13]   Rec. Doc. 35, p. 11-13.

[14]   *Id.* at p. 23.

[15]   *Id.*

[16]   *Id.* at p. 25.

[17]   Rec. Doc. 38. This additional claim was not expressly permitted by the Court, and no leave to amend was requested, even though the deadline for amending had expired. (Rec. Doc. 11). For this reason alone, the negligent misrepresentation claim should be dismissed.

4

all of Plaintiffs' claims other than redhibition. Specifically, Plaintiffs claim that throughout November and December 2015, Merge sent various emails to *Trinity* that did not disclose the existence of the "Duplicate Container Defect," Merge hosted web demos for *Trinity* employees at which Merge failed to disclose the existence of the "Duplicate Container Defect," and Merge made affirmative misrepresentations in a phone call with *Trinity* and in an e-mail sent to *Trinity.*[18] Plaintiffs also claim that on January 28, 2016, after *Trinity* contracted with Merge to purchase the LIS™ software in January 2016, Merge made affirmative misrepresentations in a web demo given to *Trinity* employees.[19] Importantly, Plaintiffs' Second Amended Petition does not identify a single communication Merge had with either Performance or Prestige; all of the alleged interactions giving rise to Plaintiffs' claims are alleged to have been between Merge and Trinity.[20] Similarly absent from the Second Amended Petition is any allegation that would suggest Performance or Prestige relied upon any communications Merge had with Trinity. More critically, and despite being afforded the opportunity to amend, the Sales Contract between Merge and Trinity is the only contract identified in the Second Amended Petition, and Plaintiffs do not allege any contract to which Performance or Prestige are parties.

## LAW AND ARGUMENT

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a claim when the plaintiff has failed "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,

---

[18]    *Id.* at pp. 17-20, ¶ 56-65.

[19]    *Id.* at pp. 19-20, ¶¶ 63-64.

[20]    *Id.* at pp. 10-20, ¶¶ 37-65.

615 F.3d 412, 417 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although a court must accept as true all factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court may also consider the Sales Contract between Trinity and Merge, attached as Exhibit A to the present motion, because that document is referred to in the Second Amended Petition and is central to Plaintiffs' claims.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).[21]

### I. Plaintiffs Do Not Allege The Existence Of Any Contract With Performance Or Prestige.

Despite being afforded the opportunity to amend to "plead a contractual relationship between Prestige and Performance and Merge," Plaintiffs' Second Amended Petition does not identify *any* contracts to which Prestige or Performance is a party.  Neither does the Second Amended Petition assert sufficient facts that could support the existence of any contract with Prestige or Performance.

In Louisiana, "[f]our elements are required for confection of a valid contract: (1) the capacity to contract, (2) mutual consent, (3) a certain object, and (4) lawful cause."  *Okuarume v. Southern Univ. of New Orleans*, 2017-0897, p.5 (La. App. 4 Cir. 4/25/18), 245 So. 3d 1260, 1264 (citations omitted).  With respect to the element of "mutual consent," a plaintiff must establish that consent was formed "through offer and acceptance."  *See id.*

Here, the Second Amended Petition goes to great lengths to cite communications ***between Merge and Trinity*** whereby Prestige and Performance are mentioned as affiliates of Trinity, but Plaintiffs never allege—even conclusorily—that any offer and acceptance between

---

[21]   *Id.* at p. 20, ¶ 66.

Merge and Performance, or between Merge and Prestige, occurred to establish the existence of a contract.[22] Indeed, Prestige is specifically mentioned only *once* in the Second Amended Petition, as an alleged subsidiary of Trinity.[23] But the Second Amended Petition does not allege that Performance or Prestige ever signed a contract with Merge. Neither does the Second Amended Petition assert any facts demonstrating Performance or Prestige participated in negotiating any contract with Merge. Further, Plaintiffs do not allege that Prestige or Performance paid Merge to purchase or use its software, or otherwise relied on any representations made by Merge.

The Second Amended Petition's allegation that Byline Financial Group identified Trinity and Performance as "co-lessee's"[24] [sic] is likewise insufficient to allege or evidence a contract with Merge. According to the Second Amended Petition, Byline Financial Group is a financing company that is separate and independent from Merge.[25] Simply put, Plaintiffs fail to allege any facts that would suggest any offer or acceptance between Merge on the one hand and either Prestige or Performance on the other hand that could create a contractual relationship between those parties.

## II. The Absence Of Any Contractual Relationship Bars Performance And Prestige's Claims For Redhibition And Rescission.

The existence of a contract is an essential element for Plaintiffs' first and second causes of action for redhibition and rescission of contract, and the absence of any such contract with Performance or Prestige precludes them from assert those claims against Merge.[26]

---

[22]   *Id.* at pp. 9-15, ¶¶ 33-49.

[23]   *Id.* at pp. 10-11, ¶ 40.

[24]   *Id.* at pp. 12-13, ¶ 43.

[25]   *Id.* at p. 10, ¶ 39.

[26]   Because Plaintiffs seek rescission of the Sales Contract between Trinity and Merge, these claims sound in contract, rather than tort. *See TMA Leasing, Inc. v. Vacuum Truck Sales & Serv., LLC*, No. 15-708, 2016 WL 3351011, at *5 (M.D. La. Jun. 15, 2016).

Plaintiffs' redhibition claim seeks "rescission of sale and recovery of all costs incurred as a result of purchasing" the software.[27] Only Trinity purchased the software, however, and the fact that Performance and Prestige did not purchase Merge's LIS software under any contract bars their claims for redhibition. *See LeBlanc v. Exxon Mobil Corp.*, No. 14-201, 2015 WL 1221560, at *2 (M.D. La. Mar. 17, 2015) ("Initially it must be noted that, as a matter of law, only purchasers of the subject gasoline are within the class of persons that can bring claims in redhibition."); *see also Miranda v. Toyota Motor Sales USA, Inc.*, No. 10-4155, 2010 WL 5058370, at *1 (E.D. La. Dec. 2, 2010) ("Under Louisiana law, Plaintiff has no action in redhibition because he was not the buyer of the subject vehicle").

Plaintiffs' second cause of action for rescission of contract for fraud alleges that Merge "substantially influenced Plaintiffs' decision to contract with Merge," and that because Merge "achieved a contractual relationship with Plaintiffs through fraud, the January 2016 sales contract" should be rescinded as void.[28] This claim is rooted in contract, but because only Trinity contracted with Merge, neither Prestige nor Performance have standing to assert a claim for rescission of contract for fraud. *See TMA Leasing*, 2016 WL 3351011, at *5 (dismissing rescission of contract and redhibition claims because no contract existed between the parties); *see also America's Favorite Chicken Co. v. Cajun Enters., Inc.*, No. 89-2778, 1996 WL 148172, *4, n.4 (E.D. La. Mar. 28, 1996) ("[O]nly CEI has standing to assert claims of breach or recision [sic] as the individual defendants were not parties to the franchise agreements.") (citing *Tallo v. Stroh Brewery Co.*, 544 So. 2d 452, 453-55 (La. App. 4th Cir. 1989)).

---

[27]    *Id.* at p. 28, ¶¶ 101-102.

[28]    *Id.* at p. 29, ¶¶ 105-106, 110.

The inability of Plaintiffs to establish any contractual relationship between Merge and Prestige or Performance is fatal to these claims, and they should be dismissed with prejudice.

### III. Merge Made No Representations, And Owed No Duty To Disclose, To Performance and Prestige, And Their Claims Of Negligence, Negligent Misrepresentation, And Violation of LUTPA Should Be Dismissed.

Notwithstanding the lack of any contractual relationship with Performance or Prestige, the Court acknowledged the possibility that they could pursue negligence, negligent misrepresentation, and LUTPA claims against Merge if they sufficiently alleged a duty to disclose that was owed by Merge to them.[29] Despite being afforded the opportunity to amend, however, Plaintiffs do not allege facts that would suggest Performance or Prestige were owed a duty to disclose by Merge. Indeed, Plaintiffs do not claim that Merge communicated at all with Performance or Prestige. Neither do Performance or Prestige allege that they relied upon any representations made by Merge—it is undisputed that only Trinity purchased the LIS software in reliance on Merge's alleged representations.

Louisiana courts find that generally, "a legal duty to disclose exists only where there [is] privity of contract or a fiduciary relationship between the parties." *Durio v. Metropolitan Life Ins. Co.*, 653 F. Supp. 2d 656, 667 (W.D. La. 2009) (quoting *McLachlan v. New York Life Ins. Co.*, 4488 F.3d 624, 628 (5th Cir. 2007)). Here, there is no privity, and Plaintiffs do not allege any

---

[29] Rec. Doc. 35, p. 23. While Plaintiffs may argue these claims are "non-contractual," Plaintiffs cannot escape the fact that these causes of action all hinge upon their allegation that Merge made purported misrepresentations and omissions toward all "Plaintiffs." To the extent Plaintiffs may argue their negligence claim is not premised upon any alleged misrepresentations or omissions, and instead based upon an alleged general duty owed to Plaintiffs to "provide" the software at issue, that claim is nevertheless defective because Merge did not "provide" any software to Performance or Prestige—only Trinity purchased the software.

fiduciary duty was owed by Merge to Performance or Prestige, because none exists.[30] In those situations where third parties—such as Performance and Prestige—allege a duty to disclose, Louisiana courts "have found that a duty [to disclose] is owed when there is communication of the misinformation by the tortfeasor *directly* to the user or the user's agent … ***and the user relied on it***." *See Commerce & Indus. Ins. Co. v. Grinnell Corp.*, No. 97-803, 1999 WL 508357, at *3 (E.D. La. Jul. 15, 1999) (quotations omitted) (emphasis added); *see also Kadlec v. Med. Center v. Lakeview Anaesthesia Ass.*, 527 F.3d 412, 422 (5th Cir. 2008); *Pastor v. Lafayette Bldg. Ass'n*, 567 So. 2d 793, 796 (La. App. 3d Cir. 1990); *Payne v. O'Quinn*, 565 So. 2d 1049, 1054 (La. App. 3d Cir. 1990). Here, the Second Amended Petition specifically and explicitly alleges that all of the communications giving rise to these claims were directed to Trinity—not Performance or Prestige:

- Merge's Ron Poe purportedly "emailed *Trinity's* Executive Vice President of Sales & Marketing Rick Ornelas" on November 19, 2015.

- Merge's Ron Poe allegedly "emailed *Trinity's* Chad Howell" on December 16, 2015.

- Merge's Diana Powell and Ron Poe purportedly "convened … web demo[s] of Merge LIS" attended by "*Trinity's* Chad Howell and Rick Ornelas," and later, by "*Trinity's* … Business Intelligence Officer Kyle Mouton[.]"

- Merge's Diana Powell made alleged misrepresentations in a January 28, 2016 "web demo" attended by "*Trinity's* Chad Howell, Kyle Mouton, Shirley Bang, Clyde Smalley, [and] Larry Trujillo[.]"

- In phone conversations and emails between November 18 and 19, 2015, Merge's Ron Poe purportedly misrepresented information to "*Trinity's* Rhett Bunce[.]"

---

[30] *See Oreman Sales, Inc. v. Matsushita Elec. Corp. of Am.*, 768 F. Supp. 1174, 1182 (E.D. La. 1991) (collecting cases holding that Louisiana law imposes no fiduciary duty in a "merely contractual" buyer/seller relationship). Any claim of a fiduciary duty is particularly specious here, where there is no contractual relationship between Merge and Performance and Prestige.

> ➢ In web demos on November 23 and December 28, 2015, Merge allegedly made misrepresentations to "*Trinity's* Chad Howell and Rick Ornelas[.]"[31]

Nevertheless, the Second Amended Petition makes conclusory and unsupported allegations that these Trinity employees "attended on behalf of Plaintiffs." But the Second Amended Petition says absolutely nothing about how these admittedly Trinity employees "attended on behalf" of the other entities, much less the identity of these individuals. Such unsupported conclusorily allegations are exactly the type of claims that do not pass Rule 12(b)(6) scrutiny under *Twombly* and *Iqbal*. What is more, these vague allegations are disproved by the correspondence reproduced in the Second Amended Petition, which illustrate that Merge communicated only with employees of Trinity using the "@TrinityMS" email domain name.[32] The Second Amended Petition does not identify a *single* communication—much less *any* alleged misrepresentation or omission—made by Merge directly to either Performance or Prestige.

Likewise absent from the Second Amended Petition is any allegation that Performance or Prestige relied on any alleged omissions or representations made by Merge. This is unsurprising because they did not purchase Merge's LIS software. Indeed, the Second Amended Petition does not even conclusorily allege that Performance or Prestige relied upon any representations by Merge, and the absence of this allegation alone warrants dismissal of Plaintiffs' claims based upon Merge's alleged misrepresentations. *See Grinnell Corp.*, 1999 WL 508357, at *3 (recognizing that recipient of communications must rely on alleged misinformation or omission to establish a misrepresentation claim).

---

[31] *Id.* at pp. 17-20, ¶¶ 56-65 (emphasis added).

[32] *Id.* at pp. 10-15, ¶¶ 40-48. Although Merge denies that these communications are relevant to Plaintiffs' causes of action, they nevertheless show that Merge dealt exclusively with Trinity, and never with Performance or Prestige.

11

Put simply, the Second Amended Petition fails to allege any facts that could support that Merge owed any duty, much less committed any wrong, toward Performance or Prestige to support the causes of action asserted by those entities. *See Grinnell Corp.*, 1999 WL 508357, at *3 (dismissing claims because "there is no evidence that [plaintiff] was dealing with [defendant], or that it had any direct or indirect contact with the [defendant].").

### IV. Performance And Prestige Are Not Third Party Beneficiaries To The Sales Contract Between Merge and Trinity.

Apparently recognizing the lack of any contractual or other legal duty owed to Prestige and Performance, the Second Amended Petition goes to great lengths to allege that the Merge LIS™ software would be used "for the benefit of … Performance Labs and Prestige."[33] But Plaintiffs' claims that Performance and Prestige would "benefit" from the use of the Merge LIS™ software is insufficient to establish any third-party rights to the Sales Contract between Trinity and Merge.

Although the Second Amended Petition does not explicitly allege that Performance or Prestige are "third party beneficiaries" of the Sales Order between Merge and Trinity, Civil Code article 1978 allows parties to a contract to stipulate benefits to third parties as a stipulation *pour autrui*. *See* La. Civ. Code art. 1978; *see also Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 2005-2364, p.8 (La. 10/15/06), 939 So. 2d 1206, 1212. A stipulation *pour autrui* is never presumed, and the party claiming the benefit—here, Performance and Prestige—carry the burden of establishing their benefits under the contract. *See Joseph*, 2005-2364, p.8, 939 So. 2d at 1212. The Louisiana Supreme Court has articulated a three-part test to determine if a contract contains a stipulation *pour autrui* and confers any rights in favor of a third party: (1) the contract

---

[33] *Id.* at p. 15, ¶ 49.

must manifest a clear intention to benefit the third party; (2) there must be certainty as to the benefit provided to the third party; and (3) the benefit must not be merely an incident of the contract between the parties. *See id.*; *see also Cashman Equip. Corp. v. Rozel Operating Co.*, 854 F. Supp. 2d 406, 413 (M.D. La. 2012). Plaintiffs do not allege any facts that could show these three elements are met.

Here, the Sales Contract between Merge and Trinity does not contain an express stipulation *pour autrui* in favor of Performance or Prestige. The Terms and Conditions of the Sales Contract specifically state that the "Agreement" is entered into "between Merge and the customer to whom the Sales Order is issued as identified in the Sales Order ('**Customer**')," and the contract clearly identifies Trinity as the customer to whom the Sales Order is issued.[34] Performance and Prestige did not sign the contract and are not otherwise mentioned as parties to or beneficiaries of the contract. As a result, the first two elements required to create a stipulation *pour autrui* are not met; there is no clear intention to benefit Prestige or Performance, and there is no certainty as to the benefit provided. *See Morris v. Empire Indemn. Ins. Co.*, No. 09-282, 2009 WL 10679407, at *3 (M.D. La. Dec. 17, 2009) (finding no stipulation *pour autrui* because "Plaintiffs have not directed the court to any language in the [contract] that manifests such an intent to confer any benefit upon [the third party]."). The third element is likewise absent, because any alleged benefit enjoyed by Performance or Prestige's use of the LIS™ software is merely incidental to the Sales Contract with Trinity. *See JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 523 (E.D. La. 2013). Lastly, Plaintiffs' allegations that Merge "knew" or "understood" that the

---

[34] Ex. A, January 11, 2016 Sales Contract, at pp. 1, 3, 7 (emphasis in original). As explained above, this exhibit should be considered with Merge's motion because it is referred to in Plaintiffs' Second Amended Petition and it is central to their claims. *See Collins*, 223 F.3d at 498-99.

13

LIS™ software might be used by Performance or Prestige is immaterial; a contracting party's knowledge that a third party may derive benefit from the contract "does not evidence a clear manifestation of an intention by [the contracting party] to confer any direct benefit to [third parties] … to find the existence of a stipulation *pour autrui*." *See Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 705 (W.D. La. Jun. 19, 2014). Performance and Prestige cannot establish any rights as third parties to the Sales Contract between Trinity and Merge, and any claims asserted by Performance and Prestige should be dismissed.

## CONCLUSION

Plaintiffs have had the opportunity to re-plead their claims to address the deficiencies in their earlier petition, but Plaintiffs' amendment still does not cure the defects that warrant dismissal of claims asserted by Performance and Prestige. Regardless of any alleged "benefit" claimed by Performance and Prestige in the Second Amended Petition, they cannot escape the fact that (i) they are not parties to any contract with Merge, (ii) they did not communicate directly with Merge, and (iii) they did not rely on any communications made by Merge directly to Trinity. As a result, Performance and Prestige have no basis to bring any claims against Merge and those causes of action should be dismissed with prejudice.

Respectfully submitted,

  */s/ Stephen H. Kupperman*
Stephen H. Kupperman, 7890
Laurence D LeSueur, Jr., 35206
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
skupperman@barrassousdin.com
llesueur@barrassousdin.com

*Attorneys for Merge Healthcare Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed using this Court's CM/ECF, which will send electronic noticing to all counsel of record this 18th day of September, 2018.

  */s/ Stephen H. Kupperman*

1522167_1