# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TRINITY MEDICAL SERVICES, L.L.C.,
ET AL.**

**VERSUS**

**MERGE HEALTHCARE SOLUTIONS,
INC.**

**CIVIL ACTION**

**NO. 17-592-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on *Merge Healthcare Solutions, Inc's* ("Merge" or "Defendant") *Motion to Dismiss Claims Brought by Plaintiffs Performance Labs, LLC and Prestige Healthcare Solutions, LLC* (Doc. 39) ("*MTD II*"). Plaintiffs Performance Labs, LLC ("Performance"), and Prestige Worldwide Leasing, LLC ("Prestige"), two of the three plaintiffs in this suit, oppose the motion.[1] (Doc. 41.) Defendant has filed a reply. (Doc. 43.) Plaintiffs have submitted a supplemental opposition. (Doc. 71.) Defendant has filed a supplemental reply. (Doc. 74.) Oral argument is not necessary.

The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Defendant's motion is granted in part and denied in part. First, Performance and Prestige's claims for redhibition and rescission of contract for fraud are dismissed. Neither Plaintiff alleged a contract for sale or any obligation independent of the January 11, 2016 Sales Order. On its face, the Sales Order is exclusively between Trinity and Merge, so Performance and Prestige cannot recover under it. Second, Performance and Prestige's tort claims (negligence, negligent

---

[1] The third Plaintiff is Trinity Medical Services ("Trinity"). (Docs. 38 ¶ 1; 41 at 1.) Defendant has essentially conceded that Trinity has stated viable claims against it. (*See* Docs. 39-1; 41 at 1.) Thus, in this motion, Defendant seeks only to dismiss the claims against Performance and Prestige. (Doc. 39-1 .)

misrepresentation and unfair trade practices) may proceed as Plaintiffs have sufficiently alleged

that Merge had a duty to all Plaintiffs. And third, Performance and Prestige cannot recover as

third party beneficiaries under the January 11, 2016 Sales Order because the contract

unambiguously precludes any non-party from claiming such status.

## I.     Relevant Factual Background

The relevant factual allegations are taken from Plaintiffs' *Second Amended Petition* (Doc.

38) ("*SAP*").  All allegations are assumed to be true for purposes of this motion and construed in

a light most favorable to Plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th

Cir. 2014). The allegations are also taken from the January 11, 2016 Sales Order (Doc. 39-2)

attached to Defendant's *MTD II*, as it is referenced in the *SAP* and central to Plaintiffs' claims.[2]

*See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Causey v.*

*Seweel Cadillac-Chevrolet Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

This suit arises out of an alleged software defect in an operating system sold and installed

by Defendant. Trinity, Performance, and Prestige (collectively, "Plaintiffs") all performed

toxicology testing services and related services in Louisiana. (*SAP* ¶¶ 1-3, Doc. 38.) Trinity

operated a clinical laboratory in Mandeville, Louisiana, which specialized in clinical medication

monitoring through toxicology testing. (*Id.* ¶ 1.) Performance is owned by Trinity and provided

medication monitoring for patients using toxicology testing. (*Id.* ¶ 2.) Trinity also owned

Prestige, which provided employee leasing services and laboratory management services to

clinical and toxicology laboratories located in Louisiana and Mississippi. (*Id.* ¶ 3.)

The toxicology testing performed at these laboratories involved collecting biological

samples from medical patients and testing those samples for chemicals, drugs (legal and illegal),

---

[2] However, as will be discussed in detail below, the Court will not consider Ron Poe's deposition (Doc. 71), as it is not referenced in the *SAP*.

and toxins, which could affect those patients' medical treatment options. (*Id.* ¶ 8.) Since patient outcomes are highly regulated by both industry regulations as well as federal and state laws and regulations, (*SAP* ¶ 11, Doc. 38), toxicology laboratories are concerned with using programs and operating systems that will meet the requirements to protect patient safety and data security. (*Id.* ¶ 13.)

Merge is a developer and manufacturer of clinical laboratory software systems, including the Merge LIS™ software at issue in this case. (*Id.* ¶¶ 18-23.) Plaintiffs allege that they expressly communicated to Merge that they required operating software that met the industry and legal requirements, which Merge allegedly confirmed its LIS™ software would provide. (*Id.* ¶¶ 26-28.) Plaintiffs claim that Merge's representations about the software's reliability and security substantially influenced their decision to select Merge as their new operating platform provider. (*Id.* ¶ 32.)

Plaintiffs contend that, when Merge was marketing its software, Merge knew and intended that its product would be used by and for the benefit of all Plaintiffs. (*Id.* ¶ 33.) Before the purchase could be perfected, Plaintiffs had to submit to a credit check through Byline Financial Group ("Byline"), Merge's preferred financing company. (*SAP* ¶ 39, Doc. 38.) In response, Trinity's Chief Operating Officer submitted credit applications for both Performance and Trinity. (*Id.* ¶ 40.) The Chief Operating Officer explained he submitted two credit checks to provide "a more accurate financial representation," as Trinity's activity occurs through Performance and Prestige. (*Id.*) Thereafter, Plaintiffs contend, emails from Byline refer to Trinity and Performance as "Co-lessee's" [sic]. (*Id.* ¶¶ 43-44.) Additionally, Plaintiffs allege that Merge knew that Performance was a "smaller lab" where Merge LIS™ would be installed. (*Id.* ¶¶ 45-49.)

However, prior to contracting with Plaintiffs, Merge allegedly became aware of a "software design" defect during or around March 2015. (*SAP* ¶ 51, Doc. 38.) Plaintiffs claim that the defect resulted in the LIS<sup>TM</sup> software creating "duplicate container numbers . . . for patients." (*Id.*) Plaintiffs assert that the software created duplicate records for a single toxicology test, which eventually could result in the software deleting both entries in error. (*Id*. ¶ 54.) Plaintiffs claim that this compromised laboratory reliability and testing accuracy because it increased the risk that the testing laboratory would fail to perform the requested toxicology test. (*Id.*) Plaintiffs allege that Merge never informed them of the software issue, either prior to installing the LIS<sup>TM</sup> software or after installation, even though Merge recalled the software. (*Id.* ¶ 55.)

In January 2016, Trinity contracted with Merge to purchase the LIS<sup>TM</sup> software. (*Id*. ¶¶ 66-68.) The only two parties referenced in the Sales Order are Merge and Trinity. (Doc. 39-2 at 3.) The contract enumerates twenty-four different items that Trinity would purchase, including installation and training under the heading "PROFESSIONAL SERVICES." (*Id*. at 4-6.) Two provisions of note under the heading "TERMS AND CONDITIONS OF SALES ORDER" are "No Third Party Beneficiaries" and "Governing Law." The former states that "nothing in this Agreement will be construed as giving any right, remedy or claim to an entity other than the Parties…" (*Id*. at 9.) The latter clause states the Sales Order shall be governed by and construed in accordance with the laws of the State of Delaware. (*Id*.)

The software was installed at Trinity's toxicology laboratory in April 2016. (*SAP* ¶¶ 66-68.) Plaintiffs began using the LIS<sup>TM</sup> software when it went "live" in late May 2016. (*Id.* ¶ 74, Doc. 38.) Plaintiffs allege that they "immediately" noticed defects in the software, including the duplicate container defects along with others, which made the software incompatible with meeting the law and regulatory requirements. (*Id*. ¶ 75.)

Plaintiffs include a list of several alleged defects in the LIS™ software including (but not limited to): "lack of audit tracking defect," "user manual defect," "illegible comments defect," "incorrect sample date defect," "no rejected samples defect," "re-preparation sample limbo defect," "no disabled users defect," "rejected report defect," and "back-dating defect." (*Id.* ¶ 76.) Generally, Plaintiffs contend that these defects have the same effect as the duplicate container issue, in that the defects compromise patient safety and data security. In addition, Plaintiffs note that Merge failed to meet industry standards regarding security protocols, resulting in a security defect that "would allow a party to access the user's system and take, corrupt, or destroy the information contained in a customer's database." (*Id.* ¶ 77.) As to this last issue, Plaintiffs claim that Merge could easily resolve this security defect in a short amount of time, but that Merge failed to correct the purported flaw. (*Id.*)

Plaintiffs indicate that they notified Merge upon their discovery of the software defects, which Merge was either "incapable of or unwilling" to resolve. (*Id.* ¶ 80.) As a result, Plaintiffs claim they acted in good faith and at their expense to create software "work-arounds" that would make the LIS™ software compatible with laws and regulations. (*SAP* ¶ 81, Doc. 38.) Purportedly, the software defects and the subsequent "work-arounds" proved to be such a financial and labor-intensive expense that Plaintiffs were unable to return their laboratories to full capacity. (*Id.* ¶¶ 83-84.) Plaintiffs claim that they were eventually "forced" to close their Louisiana laboratories and lost their management contracts for the Mississippi contracts due to the financial issues they faced as a result of the Merge LIS™ software defects. (*Id.* ¶¶ 88-90.)

Additionally, Plaintiffs contend that Merge was unable or unwilling to remedy the software defects or collaborate with Plaintiffs to find a solution. (*Id.* ¶ 92.) Plaintiffs assert that they warned Merge of the risk that the software defects posed to patient safety, but Merge failed

to correct the software issues or inform other Merge LIS<sup>TM</sup> software users of the deficiencies. (*Id.*) In May 2017, Merge emailed its customers to announce that they were exiting the laboratory information system market and that they would end support of their current system on December 31, 2018. (*Id.* ¶ 98.)

## II.    Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of

6

the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III.    Consideration of Exhibits

#### 1. Legal Standard

In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,]…matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this ostensibly ironclad standard. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 14-11300, 2018 WL 2943339, at *3 (5th Cir. June 12, 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey*, 540 F.3d at 338) (citations and internal quotation marks omitted)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the

record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) [or 12(c) ] motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 Fed. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

### B. Analysis

Here, Plaintiffs and Defendant have each submitted to this Court outside documents which they want the Court to consider. While the Court will not, in its discretion, convert this motion to dismiss to a motion for summary judgment, the Court will consider the January 11, 2016 Sales Contract based on the limited exception recognized by the Fifth Circuit. The contract is referenced throughout the *SAP* and is central to Plaintiffs' claims. However, the Court will

decline to consider the deposition testimony of Ron Poe attached to Plaintiffs' Supplemental Memorandum, as it fails to meet the above exception.[3] (Doc. 71.)

## IV. Discussion

### A. Redhibition and Rescission of Contract for Fraud

Plaintiffs' first two causes of action are for redhibition and rescission of contract for fraud. Both claims require that Prestige and Performance had contracts with Merge. Defendant argues that no such contractual relationship existed. Having carefully considered the issues, the Court finds that neither Performance nor Prestige has alleged a contract with Merge, so these claims must be dismissed.

#### 1. Parties' Arguments

##### a. Defendant's Argument

Defendant contends that, because Plaintiffs have failed to identify any contracts to which Prestige or Performance is a party, they cannot bring their claims for redhibition or rescission of contract for fraud. (*MTD II*, Doc. 39-1 at 6.) Citing to *Okuarume v. Southern University of New Orleans*, 17-0897, p.5 (La. App. 4 Cir. 4/25/18); 245 So. 3d 1260, 1264, Defendant states that there are four elements required for a contract in Louisiana: (1) the capacity to contact, (2) mutual consent, (3) a certain object, and (4) lawful cause. (*Id.*) Additionally, "mutual consent" requires a plaintiff to show that there was offer and acceptance. (*Id.*)

Defendant's primary argument is that all communication occurred between Merge and Trinity and that Prestige and Performance were only mentioned as affiliates of Trinity. (*Id.*) Defendant asserts that Plaintiffs have failed to show that Prestige and Performance contracted

---

[3] Accordingly, because the Supplemental Opposition was only filed with the intent to have the Court consider Ron Poe's Deposition, the Court finds it unnecessary to consider the Supplemental Opposition (Doc. 71) or Defendant's response to the Supplemental Opposition (Doc. 74.)

with, negotiated with, or purchased or used software from Merge. (*MTD II*, Doc. 39-1 at 7.) Additionally, Defendant notes that Prestige is only mentioned once in the *SAP* in relation to Plaintiffs' contractual claims. (*Id*.) Defendant contends that Byline's characterization of Trinity and Performance as "co-lessee's" [sic] is insufficient to establish a contractual relationship because Byline is a separate and independent company from Merge. (*Id*.)

### b. Plaintiffs' Opposition

Plaintiffs argue that they have stated a plausible basis to establish (1) that Merge offered to provide industry-standard products and services to Performance and Prestige, (2) that Performance and Prestige accepted this offer, and (3) that such contractual obligations were independent of the sales contract with Trinity. (Doc. 41 at 4-5.) Plaintiffs do not allege that a sales contract existed between Performance or Prestige and Merge. Instead, Plaintiffs argue that Merge offered to provide software installation and services, and Performance and Prestige accepted Merge's offer. (*Id*. at 4.)

In support of their theory, Plaintiffs restate email correspondence attached to the *SAP*. First, Plaintiffs allege that on December 29, 2015, Trinity's Chief Operating Officer informed a Merge representative that Trinity's activity occurs through Performance and Prestige. (*Id*. (citing *SAP* ¶ 40, Doc. 38).) Further, Plaintiffs state that Merge, during email correspondence, referred to the project name as "Trinity Medical Services, dba Performance Laboratories." (*Id*.) Plaintiffs reiterate, also, that Byline referred to Performance and Trinity as "co-lessee's." [sic] (*Id*.) Additionally, Plaintiffs contend that Merge agreed, via email, to install LIS$^{TM}$ at Performance Labs. (*Id*.) Therefore, Plaintiffs argue that all this correspondence, taken together, creates a plausible basis for the existence of a contract between Performance and Merge. (*Id*. at 4-5.)

### c. Defendant's Reply

In reply, Defendant reiterates that Plaintiffs have failed to identify a contract between Performance or Prestige and Merge. (Doc. 43 at 2.) Defendant argues that all email correspondence referenced by Plaintiffs were between Trinity and Merge, so these communications cannot show mutual consent between Performance or Prestige and Merge. (*Id*.) Further, Defendant contends that the emails also lack substance. Defendant asserts that, to perfect a contract of sale in Louisiana, a price and a thing must be established. (*Id*. at 3.) Defendant states that the emails fail to discuss a price or a quantity. (*Id*.) Finally, while Defendant concedes that the correspondence may have shown it was aware of Performance and Prestige, Defendant maintains that knowledge of their existence is not synonymous with mutual consent.

### 2. Legal Standard

Under Louisiana law,[4] "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. There are four elements necessary for the confection of a valid contract: (1) the parties must have the capacity to contract; (2) the parties must freely give their mutual consent to contract; (3) the parties must have a cause or reason for obligating themselves; and (4) the contract must have a lawful purpose. *Bank of Am., N.A. v. Teryl Emery DDS, LLC*, No. 15-778, 2016 WL 4086776, at *8 (M.D. La. July 28, 2016) (quoting *Ingraffia v. NME Hospitals, Inc.*, 943 F.2d 561, 565 (5th Cir. 1991)). Further, "[a] contract is formed by the consent of the parties through offer and

---

[4] Preliminarily, the Court notes that no party raised the issue of conflict of law, despite the fact that the January 11, 2016 Sales Order states that the laws of Delaware will apply to the contract. (Doc. 39-2 at 9.) Nevertheless, (1) because neither party briefed this issue (and in fact assumed in briefing that Louisiana law applied), and (2) more importantly, because this Sales Order is between Trinity and Merge and not with Performance or Prestige, the Court will apply Louisiana law to this issue.

acceptance." La. Civ. Code art. 1927. Thus, an enforceable contract requires "a meeting of the minds." *Read v. Willwoods Cmty.*, 14-1475 (La. 3/17/15); 165 So. 3d 883, 887. "Unless the law proscribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." *Id*.

A cause of action for redhibition is recognized in La. Civ. Code. art. 2520, *et seq*. However, "a redhibition cause of action relates to error in the cause of completed sales, and absent a sale, the rehibition articles do not apply." *Alvis v. CIT Grp./Equip. Fin., Inc.*, 05-0563 (La. App. 3 Cir. 12/30/05); 918 So. 2d 1177, 1183 (citing *Stack v. Irwin*, 246 La. 777, 167 So. 2d 363 (1964)). To perfect a contract of sale, "[t]he thing, the price, and the consent of the parties" are required. La. Civ. Code art. 2439.

### 3. Analysis

In sum, the Court holds that Plaintiffs have failed to sufficiently allege that a contract existed between either Performance or Prestige and Merge. As a result, their claims for redhibition and rescission must be dismissed.

As to redhibition, the Court finds that no contract of sale existed between Performance or Prestige and Merge. Plaintiffs clearly argue that Performance and Prestige's claims are based on "contracted obligations…independent of the January 2016 Sales Order." (Doc. 41 at 5.) However, Plaintiffs have failed to plead that a price was affixed to these "contracted obligations" and, thus, have failed to allege that a contract of sale existed. *See* La. Civ. Code art. 2439. Consequently, their claim for redhibition must be dismissed. *See Alvis*, 918 So. 2d 1183.

The rescission of contract for fraud claim fails as well. Plaintiffs attempt to show through certain correspondence that Merge made an offer to provide software installation and services

and that Performance and Prestige accepted same.[5]  However, Plaintiffs point to no correspondence (and make no other allegation) that shows any obligation which is independent of the January 2016 Sales Order.  This is fatal to Performance and Prestige's claim because (1) the only two parties referenced in the Sales Order are Merge and Trinity (*see* Doc. 39-2 at 3); (2) the Sales Order specifically lists "LAB, ON-SITE INSTALLATION AND/OR TRAINING" as a "PROFESSIONAL SERVICE" for which *Trinity and Merge* contracted (*id.* at 5); and (3) the Sales Order specifically provides that "nothing in this Agreement will be construed as giving any right, remedy or claim to an entity other than the Parties," (*id.* at 9), who were Merge and Trinity.  As a result, Plaintiffs have failed to allege any contract between Performance or Prestige and Merge, so their claim for rescission for fraud must be dismissed.

## B.  Negligence, Negligent Misrepresentation, and LUTPA

Defendant next attacks three of Performance and Prestige's tort claims, specifically those of negligence, negligent misrepresentation, and unfair trade practices under the Louisiana Unfair Trade Practice Act ("LUPTA"). While all three claims have distinct elements, Defendant focuses on one common to each: whether Defendant owed these Plaintiffs a duty. Thus, the Court will bundle the analysis of these three claims.

### 1. Parties' Arguments

#### a.  Defendant's Argument

Defendant has two arguments as to why these Plaintiffs' tort claims fail. First, Defendant argues that no communication existed between Merge and Performance or Prestige. (*MTD II*, Doc. 39-1 at 9.) Second, according to Merge, all of the alleged representations were made by

---

[5] For example, Plaintiffs have asserted that Merge was aware that activity occurred through Performance and that its software would be installed at Performance's location. (*SAP* ¶ 40, 45-46, Doc. 38.) Additionally, when Merge's Project Manager received an email about installations at Performance, she responded, "Looks good to me." (*Id*. at ¶ 48.)

Merge to Trinity and not Performance or Presitige. (*Id*.)

As to the first, citing to *Durio v. Metropolitan Life Ins. Co.*, 653 F. Supp. 2d 656 (W.D. La. 2009), Defendant contends that, in Louisiana, a duty to disclose only exists where there is privity of contract or a fiduciary relationship between the parties. (*Id*. at 9-10) Here, Defendant argues, there was no privity of contract or fiduciary relationship because there is no contract between Performance or Prestige and Merge. (*Id*. at 10.) Additionally, Defendant maintains that all communications giving rise to Plaintiffs' claims occurred between Trinity and Merge. (*Id*. at 10.) Defendant also characterizes Plaintiffs' assertation that Trinity attended meetings on behalf of all Plaintiffs as conclusory and unsupported by facts. (*Id*. at 11.)

Second, Defendant argues that the *SAP* lacks any allegation that Performance or Prestige relied on any alleged omission or representations by Merge. (*MTD II*, Doc. 39-1 at 11.) Defendant cites to *Commerce & Indus. Inc. Co. v. Grinnell Corp.*, No. 97-803, 1999 WL 508357 (E.D. La. Jul. 15, 1999), for the proposition that the recipient of communications must rely on alleged misinformation or omissions to establish a misrepresentation claim. (*Id*.) Therefore, Defendant contends Performance and Prestige fail to establish that Merge owed a duty or committed any wrong.

### b. Plaintiffs' Opposition

Plaintiffs oppose *MTD II* on four grounds. (Doc. 41 at 5-8.) First, Plaintiffs assert that Defendant has conceded that Trinity stated viable claims for negligence, negligent misrepresentation, and unfair trade practice because *MTD II* only addresses Performance's and Prestige's claims. (Doc. 41 at 6.) Therefore, Plaintiffs contend, because Defendant owed the same duty to all Plaintiffs, Performance's and Prestige's claims should not be dismissed. (*Id*.)

Second, Plaintiffs argue that the Court is required to accept the facts in the *SAP* as true.

(*Id*. at 7.) Specifically, Plaintiffs pled that Trinity's representative attended "web demos," where the alleged misrepresentations were made, on behalf of all Plaintiffs. (*Id*.) Plaintiffs contend that, at this stage, Defendant cannot insist that Trinity's representative did not attend on behalf of all Plaintiffs. (*Id*.) In the alterative, Plaintiffs assert that Trinity's knowledge of Merge's alleged misrepresentations should be imputed to Performance and Prestige, as they are wholly-owned subsidiaries. (Doc. 41 at 7.)

Third, Plaintiffs contend that Defendant had a duty to disclose under Louisiana law. Specifically, Plaintiffs argue "Louisiana follows the universal rule that a duty to disclose arise when a party makes a partial disclose that conveys a false impression." (*Id*.) Therefore, Defendant would have had a duty to disclose the Duplicate Container Defect and recall after their allegedly false representations at the "web demos." (*Id*. at 8.)

Finally, Plaintiffs argue that Merge ignored their allegations that it owed a duty to deliver a safe, accurate, and reliable laboratory software. (*Id*.) Plaintiffs assert that this duty arises from Merge's promise to provide software that met industry standards and regulatory requirements. (*Id*.) Defendant allegedly breached this duty by providing Plaintiffs with defective software. (*Id*.)

### c. Defendant's Response

In reply, Defendant mostly restates its two main points from *MTD II*. First, Plaintiffs failed to allege any disclosure or partial disclosure to Performance or Prestige. (Doc. 43 at 4.) Defendant contends that Plaintiffs' claim that Trinity acted on behalf of Performance or Prestige is conclusory. (*Id*.) Second, Defendant argues that Plaintiffs have still failed to show a general duty owed by Merge to Performance or Prestige by Merge. Again, Defendant asserts that all alleged misrepresentations were made to Trinity. (*Id*.)

## 2. Legal Standard

In determining whether a Defendant acted negligently, Louisiana uses a duty-risk analysis. *See Baxter v. Anderson*, 277 F. Supp. 3d 860, 864 (M.D. La. 2017) (deGravelles, J.). To state a claim under Louisiana's duty-risk analysis, this Court has stated that the plaintiff is required to allege:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Id*. (quoting *Christy v. McCalla*, 11-366 (La. 12/6/11); 79 So. 3d 293, 299.

For a plaintiff to plead a claim for negligent misrepresentation, the Fifth Circuit has articulated the following test:

> To make out a negligent misrepresentation claim in Louisiana: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.

*Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (citing *Brown v. Forest Oil Corp.*, 29 F. 3d 966, 969 (5th Cir. 1994). The duty of the defendant to supply correct information does not immediately arise. "In Louisiana, '[a]lthough a party may keep absolute silence and violate no rule of law or equity…if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth.'" *Id*. at 419 (quoting *Am. Guar. Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 914, 23 So. 2d 409, 455-56 (1945). Further, "Louisiana courts have held that even when there is no initial duty to disclose information, 'once [a party] volunteer[s] information, it assume[s] a duty to insure that the information volunteered [is] correct.'" *Id*. (quoting *Pastor v.*

*Lafayette Bldg. Ass'n*, 567 So. 2d 793, 796 (La. Ct. App. 1990)).

This Court has previously articulated the analysis for LUPTA:

> LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). "Because of the broad sweep of this language, Louisiana courts determine what a LUTPA violation is on a case-by-case basis." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582 (La. 5/7/14); 144 So. 3d 1011, 1025. The Louisiana Supreme Court has consistently held that, in establishing a LUTPA claim, plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* Further, "the range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Id.*

*J&J Sports Prods., Inc. v. Tienda y Taqueiria "La Frontera," LLC*, No. 16-568, 2017 WL 3166734, at *13 (M.D. La. July 25, 2017). Additionally, "[t]he 'defendant's motivation' is a critical factor—his 'actions must have been taken with the specific purpose of harming the competition.' " *IberiaBank v. Broussard*, 907 F.3d 826, 839-40 (5th Cir. 2018) (quoting *Monroe v. McDaniel*, 16-214 (La. App. 5 Cir. 12/7/16, 10); 207 So.3d 1172, 1180).

### 3. Analysis

This Court finds that Performance and Prestige have sufficiently alleged that Merge, through its partial disclosures, had a legal duty to supply Plaintiffs with accurate information and that Plaintiffs, through installation and use of Merge LIS™, relied on Merge's alleged misrepresentations. Again, the duty to disclose information does not automatically exist in Louisiana. *Kadlec Med. Ctr.*, 527 F. 3d at 419. However, a partial disclosure of information gives rise to the duty to provide correct information. *Id*. Plaintiffs have set out in detail several alleged defects in LIS™ including (but not limited to): "the duplicate container defect," "lack of audit tracking defect," "user manual defect," "illegible comments defect," "incorrect sample date defect," "no rejected samples defect," "re-preparation sample limbo defect," "no disabled users

defect," "rejected report defect," and "back-dating defect." (*SAP* ¶ 76, Doc. 38.) Plaintiffs' allegations center on the Duplicate Container Defect in that they allege Merge knew about this particular defect during or around March 2015. (*Id.* at ¶ 51.) Further, Plaintiffs detail multiple emails, phone conversation, and "web demos" in which Merge touted the reliability and performance of its product while failing to mention the Duplicate Container Defect. (*Id.* at ¶¶ 36-49, 56.) Thus, Merge, by partially disclosing incorrect information, created a duty to provide Plaintiffs with the correct information, including, any defects in Merge LIS$^{TM}$.

Further, in the *SAP*, Plaintiffs have specifically alleged that Trinity's representatives attended the "web demos" on behalf of all Plaintiffs. (*SAP* ¶ 63, Doc. 38.) Although Defendant has disputed that the representatives were in attendance for all Plaintiffs, the Court must accept Plaintiffs' well-pled factual allegations as true at this stage. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." (internal citations omitted)). Plaintiffs have demonstrated that Trinity worked on behalf of Performance and Prestige previously, such as when Trinity's Chief Financial Officers submitted credit checks for both Trinity and Performance. (*SAP* ¶ 40, Doc. 38.) Accordingly, Merge had a duty to provide correct information, and because Trinity's representatives attended on behalf of all Plaintiffs, Merge had a duty to Performance and Prestige.

Finally, the Court rejects Defendant's argument that Plaintiffs did not reasonably rely on the allegedly false statements. Plaintiffs have affirmatively pled that they "suffered damages as a result of relying on Merge's omission, in the form of 'additional expenses incurred as a result of constantly developing new work-arounds to compensate for the LIS$^{TM}$ operating system's defects' and 'lost income caused by being unable to return their laboratories to full capacity."

(Doc. 41 at 6 (quoting *SAP* ¶ 81, Doc. 38)). Therefore, Plaintiffs sufficiently alleged that they relied on Merge's misrepresentations.

In sum, Plaintiffs have adequately alleged that Merge owed a legal duty to Prestige and Performance and that Merge breached that duty. Accordingly, Defendant's motion to dismiss Prestige and Performance's tort claims is denied.

### C. Third Party Beneficiaries

Plaintiffs next claim that Performance and Prestige are third-party beneficiaries to the 2016 Sales Order.[6] Defendant responds that Plaintiffs cannot recover under the plain language of the contract. In short, the Court agrees.

Regardless of what law governs,[7] the Court must give effect to the clear and unambiguous terms of the contract. *See* La. Civ. Code art. 2046; *GMC Capital Investments, LLC*, 36 A.3d at 780. Here, the contact unambiguously provides: "nothing in this Agreement will be construed as giving any right, remedy or claim to an entity other than the Parties, their permitted successors permitted assigns, and person and entities expressly indemnified hereunder." (Doc. 39-2 at 9.) Therefore, Performance and Prestige cannot claim to be third-party beneficiaries to the Sales Order; neither was a party to the Sales Order, and both parties claim "contracted obligations independent of the January 2016 Sales Order." (Doc. 41 at 5.) Consequently, *MTD II*

---

[6] Again, the Court considers this document because it is referenced in the *SAP* and is central to Plaintiffs' claims. *See Werner v. Dept. of Homeland Sec.*, 441 Fed. App'x. 246, 248 (5th Cir. 2011); *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins*, 224 F.3d at 498-99.

[7] This Court notes, again, that the 2016 Sales Contract has a choice of law provision which states that Delaware law governs. (Doc. 39-2 at 9.) Neither side has addressed this issue. However, there is no conflict between the laws of Louisiana and Delaware in regard to interpretation of a contract when it is clear and unambiguous. *See* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) ("The Court will interpret clear and unambiguous terms according to their ordinary meaning."). Accordingly, under the law of either state, Merge would prevail.

is granted on this issues, and Performance and Prestige's claims for third-party benefits are dismissed.

## V.     Leave to Amend

Plaintiffs have requested leave to amend their complaint. Specifically, Plaintiffs argue in their opposition that they can amend to "add specificity." (Doc. 41 at 10.)

Federal Rules of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely," further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.* 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331

F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Applying this standard, the Court will reject Plaintiffs' request for an additional amendment. Plaintiffs should have had notice of the need to add specificity from the Court's prior Ruling and Order on Defendant's original motion to dismiss. (*See* Doc. 35.) As stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Marucci Sports*, 751 F.3d at 378 (citation omitted). Additionally, having already had an opportunity to amend the *SAP*, the Court believes any further effort to add specificity would be futile. For these reasons, the Court will deny Plaintiffs leave to amend and dismiss their claims with prejudice.

## VI.    Conclusion

Accordingly,

**IT IS ORDERED** that *Merge Healthcare Solutions, Inc's Motion to Dismiss Claims Brought by Plaintiffs Performance Labs, LLC and Prestige Healthcare Solutions, LLC* (Doc. 39) is **GRANTED IN PART and DENIED IN PART**. Performance and Prestige's claims for redhibition and rescission of contract for fraud against Merge are **DISMISSED WITH PREJUDICE**. Additionally, Performance and Prestige's claims against Merge as third-party beneficiaries are **DISMISSED WITH PREJUDICE**. In all other respects, Merge's motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>July 18, 2019</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**