UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRINITY MEDICAL SERVICES, LLC, | * | |
| PERFORMANCE LABS, LLC, AND | * | CIVIL ACTION NO.  3:17-00592-JWD-EWD |
| PRESTIGE WORLDWIDE LEASING, | * | |
| LLC | * | |
| | * | JUDGE DEGRAVELLES |
| VERSUS | * | |
| | * | |
| MERGE HEALTHCARE SOLUTIONS, | * | MAGISTRATE JUDGE WILDER-DOOMES |
| INC. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MERGE HEALTHCARE SOLUTIONS, INC.'S MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT SEEKING
ENFORCEMENT OF CONTRACTUAL LIMITATION OF LIABILITY CLAUSES**

Pursuant to Federal Rule of Civil Procedure 56, defendant Merge Healthcare Solutions, Inc. ("Merge") submits this memorandum in support of its motion for summary judgment seeking enforcement of the contractual limitation of liability clauses that restrict Merge's liability to the amount paid for Merge's laboratory information system software ("Merge LIS software").  There is no factual dispute that the contract at issue precludes the recovery of any "SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES … OR … LOST PROFITS" and provides that Merge's liability—"WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY"—shall not "EXCEED THE TOTAL FEES RECEIVED BY MERGE" for licensing its Merge LIS software. Louisiana courts routinely enforce such unequivocal and explicit limitation of liability clauses, and this case should not be treated any differently.

Summary judgment should be entered enforcing the unequivocal limitation of liability clauses and precluding the recovery of any lost profits, consequential damages, punitive

1698678_1

damages, or any sums whatsoever exceeding the amount Merge received for licensing its software to plaintiffs.[1]

## FACTUAL BACKGROUND

Merge developed, sold and serviced LIS software, which is software used in the operation of clinical laboratories that provide toxicology testing services.[2]  Plaintiff Trinity Medical Services, LLC ("Trinity") is a holding company and the sole owner of Performance Labs, LLC ("Performance Labs"), a toxicology laboratory that operated in Mandeville, Louisiana. Prestige Worldwide Leasing, LLC ("Prestige"), also wholly owned by Trinity, provided employees and laboratory management services to Performance Labs.[3]  Blake Bourque is the only owner of all three plaintiff-entities.[4]

According to plaintiffs, all three entities—Trinity, Performance Labs and Prestige—began searching in 2015 for a new laboratory information software to replace the system that Performance Labs had been using, which was created by Chad Howell, Trinity's chief information officer.[5]  Mr. Howell, who had the authority to execute contracts on behalf of plaintiffs and routinely did so, took the lead in finding a replacement and purchasing the new LIS software.[6]

---

[1]     Although the contract permits recovery of the amount Merge received under the parties' contract, Merge denies any liability for return of the purchase price, as plaintiffs' claims for rescission should be dismissed for the reasons explained in the contemporaneously filed motion for summary judgment on misrepresentation and omission claims.

[2]     Rec. Doc. 38, p. 7 ¶¶ 18-22 ("Complaint").

[3]     Exh. A, Rule 30(b)(6) Deposition of Trinity Medical Services, L.L.C., at 12:8–12, 104:11–12.

[4]     *Id.*

[5]     Exh. B, Deposition of C. Howell, at 134:5–135:1.

[6]     Exh. B, Deposition of C. Howell, at 136:22–24, 145:2–9; 178:4-17.

On January 11, 2016, and after weeks of negotiations, Mr. Howell executed a Sales Order for the license of the Merge LIS software to be installed at Performance Labs.[7]  The "Execution" portion of the Sales Order—directly above Mr. Howell's signature—unambiguously provides that "[t]his Sales Order is governed by and subject to the Terms and Conditions for Software License, Hardware and/or Services attached hereto as Exhibit B and made part hereof."[8]  The Terms and Conditions attached to the Sales Order make clear that "[t]hese *Terms and Conditions*, together with the Sales Order to which they are appended, constitute the '*Agreement*' which is entered into as of the Effective Date between Merge and the customer to whom the Sales Order is issued as identified in the Sales Order[.]"[9]  The Terms and Conditions incorporated into the Sales Order contain two express, unequivocal, and conspicuous limitation of liability clauses in Paragraph 9:

### 9.     LIMITATIONS OF LIABILITY

9.1    <u>Types of Damages.</u>  UNDER NO CIRCUMSTANCES SHALL MERGE, ITS SUPPLIERS, OR ANY RELATED PARTY BE LIABLE OR RESPONSIBLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR DAMAGES ATTRIBUTABLE TO LOSS OF USE OR AVAILABILITY OF DATA, LOST PROFITS OR LOST GOODWILL, WHICH CUSTOMER MAY INCUR, EXPERIENCE OR CLAIM AND WHETHER FORESEEABLE OR UNFORESEEABLE, ARISING OUT OF ANY BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT, EVEN IF MERGE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

---

[7]     Exh. C, Sales Order.

[8]     Exh. C, Sales Order.

[9]     Exh. C, Sales Order (emphasis in original).

9.2    <u>Amount of Damages.</u>  IN NO EVENT WILL MERGE'S AGGREGATE, CUMULATIVE MONETARY LIABILITY ARISING FROM OR RELATED TO THIS AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY (INCLUDING STRICT LIABILITY AND NEGLIGENCE), EXCEED THE TOTAL FEES RECEIVED BY MERGE UNDER THIS SALES ORDER.[10]

These paragraphs of the Terms and Conditions command the reader's attention: they are the only substantive provisions in all capitals, and the bold lettering in the header of  Paragraph 9 further alerts the reader to them.[11]  According to Mr. Howell, "everyone"—including legal counsel and plaintiffs' ownership group—reviewed the contract before Mr. Howell executed it.[12]

Plaintiffs' Second Amended Petition asserts causes of action for redhibition, rescission of contract, negligence, negligent misrepresentation, and violation of Louisiana's Unfair Trade Practices Act ("LUTPA").  Under these legal theories, plaintiffs claim various types of alleged damages: (i) "rescission of sale and recovery of all costs incurred as a result of purchasing the Merge LIS software," (ii) "all damages plaintiffs incurred, whether foreseeable or unforeseeable," (iii) attorneys' fees, and (iv) treble damages (presumably under LUTPA).[13] Apart from these vague assertions, the only alleged damages articulated by plaintiffs is through their experts, who submitted reports opining on the lost-profits Trinity—through wholly owned Performance Labs—would have earned "but for" the conduct of Merge.[14]  As explained in the

---

[10]    Exh. C, Sales Order (emphasis in original).

[11]    Exh. C, Sales Order.

[12]    Exh. B, Deposition of C. Howell, at 174:9-25

[13]    Rec. Doc. 38, at 28-33 ¶¶ 100-126.  Plaintiffs have not satisfied the conditions of La. R.S. 51:1409(B) to be entitled to treble damages under LUTPA, which requires formal procedures before the Louisiana attorney general. Summary judgment is due for the treble damages claim on this ground as well.

[14]    Plaintiffs have not submitted any evidence—whether through experts or otherwise—of any alleged damages incurred by Prestige Worldwide.  Plaintiffs' experts' opinions were limited to their projections of lost-profits of Trinity through its subsidiary Performance Labs.

4

contemporaneously filed motion for summary judgment on plaintiffs' lost-profits claims, however, Merge cannot be liable for lost-profits because (a) plaintiffs have no evidence the Merge LIS software caused plaintiffs' alleged damages, and (b) plaintiffs cannot prove entitlement to lost-profits with any degree of reasonable certainty. What is more, and as set forth in the accompanying motions in *limine*, the opinions of plaintiffs' experts are speculative and unreliable, and should be excluded under Rule 702.

Irrespective of those incurable evidentiary flaws plaguing plaintiffs' lost-profits claim, the unequivocal contractual limitation of liability clauses in the Sales Order between the parties provides that "UNDER NO CIRCUMSTANCES" shall Merge be liable for "LOST PROFITS," "CONSEQUENTIAL DAMAGES," or "PUNITIVE DAMAGES," and "IN NO EVENT" shall Merge be liable for any amount exceeding "THE TOTAL FEES RECEIVED BY MERGE" under the Sales Order.[15]  These unequivocal terms of the Sales Order provide an additional, independent ground for dismissing plaintiffs' claims for lost-profits, as well any punitive damages, or any other alleged (and unidentified) special or consequential damages sought by plaintiffs.  Summary judgment should be entered enforcing the plain terms of the Sales Order and dismissing plaintiffs' claim for lost-profits, consequential damages and punitive damages, and limiting any surviving claim to a maximum potential recovery of the amount paid to Merge under Sales Order.[16]

---

[15]     Exh. C, Sales Order.

[16]     Although the Sales order permits recovery of the amount Merge received under the Sales Order, Merge should not be liable for any rescission damages, as explained in Merge's motion for summary judgment on plaintiffs' misrepresentation claims.

1698678_1

## LAW AND ARGUMENT

### I.    Legal Standard.

Summary judgment is appropriate where, as here, there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). When the movant does not bear the burden of proof on the pertinent issue at trial, it may satisfy its summary judgment burden by pointing to the lack of evidence as to any element essential to the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden shifts to the non-moving party to produce evidence of a genuine dispute for resolution at trial. *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).  The non-moving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Brandon*, 808 F.3d at 270 (citation and internal quotation marks omitted).

Summary judgment may be rendered as to any claim or defense, or any part of a claim or defense.  Fed. R. Civ. P. 56(a).  Partial summary judgment is an efficient tool for narrowing and focusing the issues for trial, thereby promoting efficient use of the federal courts. *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).  Here, there is no dispute that the unequivocal limitation of liability clause in the contract limits plaintiffs' claimed damages to the amount Merge received pursuant to the Sales Order.  Summary judgment should be entered precluding plaintiffs from recovering any other type or amount of damages.

### II.    The Plain Language Of The Sales Order Is Enforceable And Forecloses Recovery of Any Lost-Profits, Consequential Damages, Punitive Damages, Or Any Amount Exceeding The Amount Paid Under The Sales Order.

Louisiana law is settled that parties can, in advance, contractually limit the measure of damages, and courts routinely enforce limitation of liability clauses. *See Isadore v.*

1698678_1

*Interface Sec. Systems*, 58 So. 3d 1071, 1074 (La. App. 3d Cir. 2011) (affirming grant of summary judgment enforcing contractual limitation of liability clause); *Soileau & Coreil v. Trans-Western Pub.*, 542 So. 2d 198, 199 (La. App. 3d Cir. 1989) ("It is well established in our jurisprudence that such limitation of liability clauses … are valid and not against public policy."); *Haspel v. Rollins Protective Service, Inc.*, 490 So. 2d 530 (La. App. 4th Cir. 1986) (enforcing contractual clause and finding plaintiff's "liability is to be limited to the sum of $250.00 in accordance with the terms of the contract.") *Rhodes v. Congregation of St. Francis*, 476 So. 2d 461, 463 (La. App. 1st Cir. 1985).[17]  Such contractual limitation clauses become the law between the parties, which "must be given effect" according to Louisiana's general contractual interpretation rules. *See Mobil Expl. & Prod. U.S. v. Certain Underwriters*, 837 So. 2d 11, 32 (La. App. 1st Cir. 2002).[18]

   Here, the plain terms of the Sales Order clearly and explicitly evidence the parties' intent to limit Merge's liability to the amount it received for licensing its LIS software, and bar any claim for lost-profits, consequential damages, or punitive damages.  Paragraph 9.1 of the Terms and Conditions, to which plaintiffs unequivocally agreed, plainly states that "UNDER NO CIRCUMSTANCES" will Merge be liable for "ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR DAMAGES ATTRIBUTABLE TO LOSS OF USE OR AVAILABILITY OF DATA, LOST PROFITS OR

---

[17] The only exception to this well-settled principle is that a contractual limitation of liability clause cannot waive, in advance, liability for personal injuries or for intentional or gross fault. *See* La. Civ. Code art. 2004.  This exception is inapplicable here, because there are no personal injuries at issue, plaintiffs do not allege any gross fault, and there is no evidence that Merge committed any intentionally fraudulent acts. (*See* Merge's contemporaneously filed motion for summary judgment on plaintiffs' misrepresentation claims).

[18] Under those interpretation guidelines, Louisiana law instructs that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation" is required to determine the parties' intent. *See* La. Civ. Code art. 2046.

LOST GOODWILL … WHETHER FORSEEABLE OR UNFORSEEABLE[.]"[19]   In the next

sub-paragraph, labeled Paragraph 9.2, the Terms and Conditions agreed to by plaintiffs explicitly

state that "IN NO EVENT" will Merge's liability "EXCEED THE TOTAL FEES RECEIVED

BY MERGE UNDER THIS SALES ORDER."[20]

These unambiguous provisions are binding and should be enforced as written.

Indeed, Louisiana courts routinely grant summary judgment and enforce contractual limitation of

liability clauses under nearly identical circumstances. *See Isadore*, 58 So. 3d at 1074 (affirming

grant of summary judgment enforcing contract limiting defendant's collective liability to $1000);

*Haspel*, 490 So. 2d at 534 (affirming summary judgment based on exculpation clause limiting

defendant's liability "to the sum of $250.00 in accordance with the terms of the contract.").

Plaintiffs cannot claim surprise by this limitation of liability clause in the Sales Order here:

plaintiffs' chief information officer, Mr. Howell, testified that "everyone"—including plaintiffs'

owners and legal counsel—reviewed the relevant contract before it was executed.[21]   Under

Louisiana law, Mr. Howell's signature on the Sales Order is uncontradicted evidence of

"objective intent to be bound by the provision in the contract." *Haspel*, 490 So. 2d at 533

(recognizing well-settled principal that "[a] party cannot avoid an obligation merely by

contending that he had not read it or did not understand it.") (citations omitted).   The limitation

---

[19]   Exh. C, Sales Order.

[20]   *Id.* While these provisions are contained in the Terms and Conditions, they are plainly incorporated in and are a part of the Sales Order.  The Sales Order explicitly provides—directly above Mr. Howell's signature—that the "Sales Order is governed by and subject to the Terms and Conditions … attached hereto as Exhibit B and made part hereof."  The Terms and Conditions additionally state that they, "together with the Sales Order to which they are appended, constitute the '***Agreement***'" between the parties.  Louisiana law is clear that "documents may be incorporated in contracts by attachment or reference thereto" and that "this practice has been so universal that it has apparently seldom been drawn into question." *Action Finance Corp. v. Nichols*, 180 So. 2d 81, 83 (La. App. 2d Cir. 1965).

[21]   Exh. B, Deposition of C. Howell, at 174:9-25.

1698678_1

of liability clauses in the parties' contract should be enforced to preclude recovery of lost profits, consequential damages, punitive damages, or any amount exceeding the sum Merge received under the Sales Order.

## **CONCLUSION**

There is no factual dispute that the Sales Order contractually bars any claim for lost profits, consequential damages, punitive damages, or any amount exceeding the amount Merge was paid under the Sales Order.  Louisiana courts routinely enforce such provisions, and this case should not be treated any differently.  Because there are no issues of material fact as to the enforceability of the limitation of liability clause in the Sales Order between the parties, judgment should be entered dismissing plaintiffs' claims for lost profits, consequential damages, punitive damages, or for any claims seeking amounts in excess of the amount Merge received under the Sales Order.

Respectfully submitted,

*/s/ Stephen H. Kupperman*
Stephen H. Kupperman, 7890
Laurence D. LeSueur, Jr., 35206
Viviana Aldous, IL Bar 6320208 (*pro hac vice*)
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700
skupperman@barrassousdin.com
llesueur@barrassousdin.com
valdous@barrassousdin.com

*Attorneys for Merge Healthcare Solutions, Inc.*

1698678_1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above and foregoing has been filed using this Court's

CM/ECF, which will send electronic noticing to all counsel of record this 13th day of August,

2019.

_/s/ Stephen H. Kupperman_

1698678_1