# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TRINITY MEDICAL SERVICES, LLC,**
**PERFORMANCE LABS, LLC**
**PRESTIGE WORLDWIDE LEASING, LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 17-592-JWD-EWD**

**MERGE HEALTHCARE SOLUTIONS, INC.**

## RULING AND ORDER

      This matter is before the Court on four motions for summary judgment filed by Defendant, Merge Healthcare Solutions, Inc. ("Merge" or "Defendant"): (1) *Motion for Summary Judgment on Lost Profits* ("*Lost Profits Motion*") (Doc. 77); (2) *Motion for Summary Judgment on Misrepresentation and Omission Claims* ("*Misrepresentation Motion*") (Doc. 78); (3) *Motion for Summary Judgment Seeking Enforcement of Contractual Limitation of Liability Clauses* ("*Limitation of Liability Motion*") (Doc. 79); (4) *Motion for Summary Judgement on Claims by Prestige Worldwide* ("*Prestige Motion*") (Doc. 80).  In opposition, Trinity Medical Services, LLC, ("Trinity") Performance Labs, LLC, ("Performance Labs") and Prestige Worldwide Leasing, LLC ("Prestige") (together, "Plaintiffs") have filed memorandums in opposition to each of the motions.[1] Accompanying their memorandums in opposition, Plaintiffs filed *Appendix I: Statement of Material Facts Establishing a Genuine Dispute*. (Doc. 95.) Defendant filed a reply to each of the plaintiff's memorandums in opposition.[2]  Defendant also filed *Merge Healthcare*

---

[1] *See Memorandum in Opposition to Merge's Motion for Summary Judgment on Lost-Profits Damages* ("*Lost-Profit Opposition*") (Doc. 94); *Memorandum in Opposition to Merge's Motion for Summary Judgment on Misrepresentation and Omission Claims* ("*Misrepresentation Opposition*") (Doc. 90.); *Memorandum in Opposition to Merge's Motion for Summary Judgment Seeking Enforcement of Contractual Limitation of Liability Clauses* ("*Limitation of Liability Opposition*") (Doc. 93); *Memorandum in Opposition in Opposition to Merge's Motion for Summary Judgment on Claims by Prestige Worldwide* ("*Prestige Opposition*") (Doc. 92).
[2] *See Merge Healthcare Solutions, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment on Lost-Profits Damages* (Doc. 103); *Merge Healthcare Solutions, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment on Misrepresentation and Omission Claims* (Doc. 104); *Merge Healthcare Solutions, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment Seeking Enforcement of Contractual Limitation of*

*Solutions, Inc.'s Motion to Strike Plaintiffs' Appendix I*, ("*Motion to Strike*") which is fully

briefed. (*Motion to Strike*, Doc. 112; *Memorandum in Opposition to Merge's Motion to Strike*,

Doc. 115; *Reply Memorandum in Support of Motion to Strike*; Doc. 118.)  Oral argument is not

necessary. Having considered the parties arguments, the undisputed facts, and the law, the Court

will:

a. DENY Defendant's *Motion to Strike* without prejudice.  Defendant's objections to the evidence offered by Plaintiffs were noted and considered in conjunction with the Court's consideration of Defendant's motions for summary judgment. In ruling on summary judgment, the Court does not consider arguments and legal conclusions couched as facts.

b. DENY Defendant's *Lost Profits Motion* because questions of fact remain as to whether there were defects in the Merge LIS Software that impeded Performance Labs from restarting operations and progressing with testing. Therefore, the Court cannot say as a matter of law, Plaintiffs' cannot claim lost profits because it is too speculative or based on pure conjecture.

c. DENY Defendant's *Misrepresentation Motion* because questions of facts exist as to the intent of the parties, the inducement of the misrepresentations and the justifiable reliance of Plaintiffs on Defendant's representations and omissions. These questions of fact pervade whether the Plaintiffs can recover for fraud, negligent misrepresentation, and under LUTPA.

d. DENY without prejudice to re-urging the *Limitation of Liability Motion* because it is inappropriate for the Court to enforce the contractual limitation of liability clause at summary judgment as questions of fact remain regarding the Plaintiffs' claims for fraud and gross negligence. However, in the event that the exceptions do not apply, the contractual limitation of liability is not barred as a matter of law and is enforceable to bar any award for lost profits and limit Plaintiffs' recovery to what was paid under the Sales Order.

e. DENY Defendant's *Prestige Motion* because there is evidence that creates a question of fact as to whether Prestige lost contracts with Performance Labs when it shuttered. If a jury finds that the alleged defects in the Merge LIS Software was the cause of Performance Labs' failure, then a reasonable jury could likewise find that but for Performance Labs' failure, Prestige would have continued to provide staffing at Performance Labs.

---

*Liability Clauses* (Doc. 105); *Merge Healthcare Solutions, Inc.'s Reply Memorandum in Support of Motion for Summary Judgment on Claims by Prestige Worldwide* (Doc. 106).

## I.    Relevant Facts

Trinity is a Louisiana holding company and the sole owner of Performance Labs and Prestige. Performance Labs was a laboratory located in Mandeville, Louisiana that performed toxicology tests. Prestige provided employee leasing and laboratory management services to Performance Labs and other labs, including Pathway Diagnostics, LLC ("Pathway"). Blake Bourque is the only owner of all three Plaintiff companies. Pathway, which is not a party to this suit, is a laboratory owned by insiders of Trinity that performs toxicology tests and is located in Mississippi.

Merge is a developer and manufacturer of clinical laboratory software systems, including the Merge LIS™ software ("Merge LIS Software") at issue in this case.

As a toxicology laboratory, Performance Labs was subject to the Clinical Laboratory Improvement Act ("CLIA"). To be able to run tests on live patient samples, Performance Labs needed to be certified by the Centers for Medicare and Medicaid Services ("CMS"). CMS's certification was based on compliance with regulatory and statutory mandates to ensure patient health and safety. In June 2015, Performance Labs failed an inspection by the Louisiana Health and Hospitals Department ("LHHD") and CMS. The state and federal regulators found "condition-level noncompliance" that "constitute an immediate jeopardy to patients." (Def. Ex. C, July 31, 2015 Letter from CMS to Performance Labs at 4, Doc. 77-7.) As a result of Performance Lab's noncompliance, it was required to submit plans of correction to state and federal regulators and agreed to cease testing patients on two sets of equipment. (*Id.* at 5.) During an on-site visit in the fall of 2015, state and federal regulators again concluded that Performance Labs "demonstrated continued systemic and pervasive problems through the laboratory which has led to findings of continued immediate jeopardy." (Def. Ex. E, December 23, 2015 Letter

from CMS to Performance at 4, Doc. 77-9.) Due to these findings, Performance Labs was sanctioned by the state and federal regulators and as a result:

    (a) barred from accepting live patient samples (Doc. 77, Ex. F, December 30, 2015 Emails from CMS at 3);

    (b) precluded from accepting payments from Medicare and Medicaid (*Id.*);

    (c) required to notify all clients who ordered patient testing that the results were not accurate or reliable (Doc. 77, Ex. G1, January 12, 2016 Plan of Correction at 20, 46); and

    (d) had their CLIA certificate suspended, prohibiting Performance Labs from performing patient testing. (Doc. 77, Ex. H, January 14, 2016 Email from CMS to Performance Labs.)

       Facing this pressure from federal and state regulators and hoping to get Performance Labs back into compliance, Trinity negotiated with and on January 11, 2016, signed a Sale Order with Merge to lease the Merge LIS Software to use at Performance Labs and Pathway.  As a result of the sanctions, Performance Labs also reduced their equipment and personnel to a barebones operation, employing only a technical supervisor and a lab technician. (Def. Ex. K1, M. Spruill Dep., at 117:17-19, Doc. 77-16.)

       Also, in January 2016, Blake Bourque's brother in law, Kyle Mouton, along with Trinity's in-house counsel, Phil Martinez, opened Pathway in Mississippi. (Def. Ex. O1, K. Mouton Dep., at 17:19-22, 18:22-20:3, Doc. 77-22.) Pathway is not owned by Trinity. (Pl. Ex. 19, K. Mouton Dep., at 18:24-19:7, Doc. 95-19; Pl. Ex. 12, B. Bourque Dep., at 127-28, Doc. 95-12.) Most of Performance Lab's staff and equipment was moved to Pathway. (Def. Ex. O1, K. Mouton Dep. at 120:3-15, 30:9-10, 91:2-12, Doc. 77-22.) Trinity provided Pathway with start-up capital to pay expenses as well as management and IT services. (*Id.* at 106:12-19, 87:9-88:3.) Trinity allowed Pathway to use the Merge LIS Software. (*Id.*) In June 2016, Pathway began testing patient samples and billing clients using the Merge LIS Software. (Def. Ex. K1, M. Spruill Dep., at 154:23-155:5, 217:11-15, Doc 77-16.)

However, to prove compliance and become recertified under the CLIA, Performance Labs only performed validation and establishment studies until August 24, 2016, when CMS allowed Performance Labs to begin doing screening tests. (Def. Ex. S, August 24, 2016 Email from CMS to Performance Labs, Doc. 77-28.) During this time, it was under heightened scrutiny from federal and state regulators. (Pl. Ex. 5, C. Howell Dep., at 188:10-189:2, Doc. 95-5.) Performance Labs began with a small panel of tests and had an agreement with Pathway to reference any tests not offered for $85/sample. (Pl. Ex. 12, B. Bourque Dep., at 150:20-21, 203:18-204:11, 406:5-6, Doc. 95-12; Pl. Ex. 2 R. Poe Dep., 125:12-22, 144:2-145:21, Doc. 95-2.) On January 17, 2017, CMS permitted Performance to start conducing confirmatory testing. (Def. Ex. T., October 14, 2016 Email from CMS to Performance Labs, Doc 77-29.) On January 20, 2017, Performance Labs began accepting patient samples from one clinic. (Def. Ex. K1, M. Spruill Dep. at 189:8-19, Doc. 77-16.)

In February 2017, Performance Labs identified an issue with the tracking of quality control data in the Merge LIS Software and voluntarily ceased patient testing. (Def. Ex. W, March 6, 2017 Correspondence from Performance Labs to CMS, Doc. 77-32.) Performance Labs formulated a "work around" for the issue and indicated to CMS that the issue did not cause Performance Labs or Pathway to submit any incorrect testing results. (*Id.*) In March 2017, Performance Labs also reported other issues with the Merge LIS Software to CMS. (Def. Ex. X, March 17, 2017 Email from CMS to Performance Labs, Doc. 77-33.) Despite these reported issues with the Merge LIS Software, in August 2017, Performance Labs' suspension was lifted, it was recertified under the CLIA, and could bill Medicare and Medicaid following a successful onsite inspection in June 2017 by state regulators. (Def. Ex. U, January 24, 2017 Email between

CMS and Performance Labs, Doc. 77-30; Def. Ex. Y, August 9, 2017 Correspondence from CMS, Doc. 77-34.)

Plaintiffs allege that the Merge LIS Software contained numerous defects but focus on two alleged defects, the Duplicate Container Defect and the Trojan Horse Defect. The Duplicate Container Defect allegedly resulted in the Merge LIS Software creating duplicate container numbers for patients. Therefore, Plaintiffs maintain that when the Duplicate Container Defect occurred, the software created duplicate records for a single toxicology test, which eventually could result in the software deleting both entries in error. Plaintiffs claim that this compromised laboratory reliability and testing accuracy because it increased the risk that the testing laboratory would fail to perform the requested toxicology test. The Trojan Horse Defect resulted in passwords and other security information being discoverable on Google. As such, Plaintiffs assert that the evidence shows that Plaintiffs were not able to use the Merge LIS Software and be HIPAA compliant. Defendant's expert witness testimony controverts that the alleged defects were present in the Merge LIS Software installed at Performance Labs.

## II.     Procedural History

On August 28, 2017, Defendant removed Plaintiffs' state court action from the Nineteenth Judicial District Court for the Parish of East Baton Rouge, pursuant to the Court's diversity jurisdiction. (Doc. 1.) At the time of removal, Plaintiffs' alleged four causes of action against Defendant: (1) redhibition; (2) rescission of contract for fraud; (3) negligence; and (4) unfair trade practices. (Doc. 1-2.) Defendant filed a *Motion to Dismiss*, and in a subsequent *Ruling and Order*, the Court dismissed without prejudice (1) Plaintiffs' fraud claim against Merge and (2) Performance and Prestige's claims against Merge. (Doc. 35.) Plaintiffs filed a *Second Amended Complaint*. (Doc. 38.) Defendant filed a *Motion to Dismiss* the *Second Amended Complaint*. (Doc. 39.) In a *Ruling and Order*, the Court dismissed with prejudice

Performance and Prestige's claims for redhibition and rescission of contract for fraud and claims as third-party beneficiaries. (Doc. 75.) Therefore, remaining at issue in this case are (a) Trinity's claims for (1) redhibition; (2) rescission of contract for fraud; (3) negligence; (4) negligent misrepresentation; and (5) unfair trade practices; and (b) Performance and Prestige's' claims for (1) negligence; (2) negligent misrepresentation; and (3) unfair trade practices. On August 1, 2019, Merge filed its *Answer* to the *Second Amended Complaint*. (Doc. 76.)

## APPLICABLE STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

DISCUSSION

**III.    Motion to Strike**

    a.    <u>Parties' arguments</u>

Defendant argues that Appendix I should be struck from the record because it (1) muddles the summary judgment record with numerous arguments that are not proved by the very evidence cited in support and (2) improperly contains arguments and purported facts that are wholly immaterial to Plaintiffs' claims or to the issues raised in Merge's summary judgment motions, including arguments and allegations that Plaintiffs have stipulated do not form the basis of their claims. (Doc. 112 at 1.)

Specifically, Defendant contends that Plaintiffs cannot now claim as undisputed facts newly alleged misrepresentations or omissions that were not disclosed during discovery. Defendant states:

> At a January 17, 2019 hearing on Merge's motion to compel, plaintiffs stipulated before Magistrate Judge Wilder-Doomes that (i) the only alleged misrepresentations at issue were those specifically alleged in the Second Amended Petition ("SAP"), and the only alleged omission at issue related to a purported "duplicate container defect"; and (ii) the only alleged defects at issue were those listed in response to interrogatory 6 (which are the same as those defects listed in paragraphs 76 and 77 of the SAP), as well as an alleged "averaging number" defect. (Ex. A, Tr. of January 17, 2019 Hearing, at 23:9-26:8; Rec. Doc. 38, ¶¶ 76-77.) Judge Wilder-Doomes warned plaintiffs they had a duty to supplement their discovery responses if additional misrepresentations, omissions, or defects became known, but plaintiffs never supplemented their responses before the July 15, 2019 discovery deadline or in the months thereafter. (Ex. A, at 26:1-8.)

(Doc. 112-1 at 2.) [3]

---

[3] During a hearing on Defendant's *Motion to Compel* the parties on the record explained their stipulation regarding the misrepresentation, omission, and fraud claim. The parties stated:
> MR. KUPPERMAN: All right. Interrogatory 2, the misrepresentations are all set forth in the second amended complaint. There are no others known. The omission was the failure to disclose a Duplicate Container Defect.
> THE COURT: Okay.

8

As to the specific factual allegations that Defendant argues are immaterial or unsubstantiated, Defendant points to the Plaintiff's discussion of: (1) Merge's HIPAA/FDA/HITECH compliance; (2) unalleged defects in the Merge LIS Software; and (3) Merge's decision to exit the market for laboratory software. (Doc. 112-1 at 14-20.)

In response, Plaintiffs argue that Defendant did not follow the local rules when filing four motions for summary judgment instead of one. (Doc. 115 at 1.) Therefore, Plaintiffs maintain that because Defendant did not submit one motion for summary judgment, they could organize their statements of undisputed facts in an omnibus appendix. (Doc. 115 at 2.) Plaintiffs address Defendant's specific evidentiary objections by claiming that the evidence is admissible, and relevant to proving Plaintiffs' claims. (*Id.*)

---

MR. KUPPERMAN: The documents, again, specifically enumerated in the interrogatory response by Bates number are all the documents currently known other than the ones that were initially designated in that initial production.
THE COURT: Okay.
MR. KUPPERMAN: And the misrepresentations were all among the people named in the interrogatory responses and they occurred in the fall of 2005 and not later than January 11 -- I'm sorry --
THE COURT: '15.
MR. KUPPERMAN: -- 2015 -- thank you.
THE COURT: All right.
MR. KUPPERMAN: I just did that before.
THE COURT: That's okay.
MR. KUPPERMAN: 2015 and they all occurred before January 11, 2016.
THE COURT: Okay.
MR. KUPPERMAN: With regard to Interrogatory 5 --
MR. STEWART: And, Your Honor --
I'm sorry to interject.
MR. KUPPERMAN: That's all right, yeah.
MR. STEWART: -- we would simply make clear that we are reserving our right to supplement as additional misrepresentations become known through ongoing discovery.
THE COURT: Okay. And, I mean, always you have not just the right, but the duty to supplement --
MR. BURGE: Yeah.
THE COURT: -- if you become aware of additional information.
(Doc. 112-2 at 24:24-26:8). Plaintiffs did not further supplement their discovery responses to include more misrepresentations or omissions. Similarly, Plaintiffs stipulated that the defects that are the basis of their claims were all contained in the Second Amended Petition. (Doc. 112-2 at 23-24.)

Plaintiffs claim that Defendant should address its interpretation of the facts in its four summary judgment motions and that there is no reason to grant the *Motion to Strike*. (Doc. 115 at 4.) Plaintiffs do not address Defendant's argument that the newly alleged misrepresentations, omissions, and defects should be barred due to Plaintiffs' stipulations with Judge Wilder-Doomes.

In reply, Defendant points out that the local rule Plaintiffs cite was only enacted after Defendant filed its *Motion to Strike*. (Doc. 118 at 2.) Defendant reasserts that the *Motion to Strike* did not violate the local rules. (*Id.* at 3.) Finally, Defendant urges the Court to strike Appendix I. (*Id.* at 3-5.)

    b. Law governing

For approximately nine years, recommended federal practices have entailed considering objections to evidence offered in support of or in opposition to motions for summary judgment in conjunction with the actual motion for summary judgment, as opposed to a separate motion to strike, similar to the practice of objecting to evidentiary offerings at trial. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)("Prior to December 1, 2010, the proper method by which to attack an affidavit was by filing a motion to strike."); *Smith v. Palafox*, 728 F.App'x. 270, 275 (5th Cir. 2018)(citing *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017)("[T]he new rule allows a party to object 'that the material cited to support or dispute a fact cannot be presented in a form that would be admissible as evidence.' ")).  Acting in accord with these recommended practices renders a separate motion to strike moot or unnecessary.

The 2010 Advisory Committee Notes to Rule 56 of the Federal Rules of Civil Procedure specifically address this issue:

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. **There is no need to make a separate motion to strike.** If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

(Emphasis added). *See Cutting Underwater Techs. USA, Inc*, 671 F.3d at 515 ("Under the now-applicable Rule 56(c)(2) … it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material."). Motions to strike should be treated as objections. *See National Roofers Union v. Ascension Sheet Metal, LLC*, No. 13-597, 2015 WL 4238021, at *1 (M.D. La. June 25, 2015)(citing *Cutting Underwater Techs*, 671 F.3d at 515).

c. <u>Analysis</u>

The Court declines to consider the merits of the *Motion to Strike* because doing so is not necessary under the Federal Rules of Civil Procedure. Defendant's objections to Plaintiffs' proffered evidence will be considered in conjunction with the Court's ruling upon Defendant's motions for summary judgment. The newly enacted Local Rule 56(e) for the Middle District of Louisiana states that motions to strike are not allowed. However, this newly enacted rule does affect the Court's consideration of the *Motion to Strike*, because that motion was filed before the new rule became effective. Therefore, at the time the *Motion to Strike* was filed, the rule allowed parties to file a separate motion to strike.

As explained below, summary judgment for the Defendant is not appropriate, notwithstanding its objections to evidence in Plaintiffs' Appendix I regarding the misrepresentations, omissions, and defects that were not alleged in the Second Amended Petition. Defendants correctly note that Judge Wilder-Doomes specifically stated Plaintiffs had a duty to supplement their interrogatory responses with any additional misrepresentations,

omissions or defects that they discovered and intended to use as a basis for their claims. Defendants are also correct that the admissibility of the statements underlying Plaintiffs' new claims is questionable and that the Court should ignore, at summary judgment, the phrasing of Plaintiffs' "undisputed facts" which are argumentative and not clearly supported by the evidence. These points do not, however, change whether genuine disputes of material fact exist; the deposition testimony from Blake Bourque and his former staff members, attached to Appendix I, provide enough evidence to establish triable issues of fact.

 As to whether evidence of Merge's decision to exit the laboratory software market is relevant, the Court will defer its decision until trial. Plaintiffs' trial evidence may show that the alleged software defects were more widespread than Defendant asserts. If a reasonable factfinder could conclude that software defects caused Merge's decision to exit the market, the evidence regarding those defects would be relevant because it would make it more likely that Defendant acted with fraudulent intent.

Based on the foregoing, the *Motion to Strike* is denied without prejudice. In ruling on the motions for summary judgment, the Court will consider the evidence proffered in Appendix I but not Plaintiffs' characterization of it. To the extent that Plaintiffs did not provide fair notice of the misrepresentations, omissions, and defects that form the basis of their claims, the Court will defer ruling on whether to exclude the testimony at trial under Rule 403 of the Federal Rules of Evidence. Defendant is urged to reassert the objections, if necessary, outside of the presence of the jury.

## IV. Lost Profits Motion

### a. Parties' arguments

Defendant argues that summary judgment is appropriate on Plaintiffs' claim for lost profits damages because: (1) there is no evidence that the Merge LIS software caused the lost-

profits damages and (2) any lost-profit damages are speculative and uncertain. (Doc. 77-1 at 1.) Defendant points out that the federal and state regulators imposed sanctions that caused Performance Labs to cease operating before Performance Labs installed the Merge LIS software. (*Id.* at 6.) Defendant further argues that Pathway Diagnostics (funded, created, and effectively operated by Plaintiffs' staff) successfully operated in Mississippi using the same Merge LIS software as was allegedly defective. (*Id.*) Defendant also argues that Plaintiffs cannot show the lost-profit damages with any reasonably certain degree because, as a result of the government's sanctions, Performance Labs had to "start over as a 'new lab,' which [] presented numerous uncertainties and obstacles to success." (*Id.*) Ultimately, Defendant states that the any calculation for lost-profits is too remote and speculative as a matter of law because Plaintiffs, in reopening after the CMS sanctions, had (1) no customers; (2) no cash flow; (3) no "commercially viable" panel; (4) minimal staff and instruments; and (5) were subject to regulatory changes. (Doc. 77-1 at 18-19.)

In response, Plaintiffs argue that summary judgment is not appropriate on the issue of lost profits because: (1) there are genuine disputes of material facts as to whether the Merge LIS Software's defect were the cause of Performance Lab's decision to cease operating, as Performance Labs did not want to risk violating HIPAA or otherwise compromising lab safety/security; (2) the lost-profit projections are not speculative; and (3) to the extent that Performance Labs played a role in its own collapse, that is a question of comparative fault not appropriate for the Court to decide at summary judgment. (Doc. 94 at 7-10.)

Plaintiffs maintain that there is a genuine issue of material fact as to whether Merge caused Performance Labs to suffer lost-profit damages. Specifically, Plaintiffs argue that the defects in the Merge LIS Software forced them to choose between operating and violating

federal and state regulations or ceasing operations. (Doc. 94 at 7.) Plaintiffs point to the Trojan Horse Defect—which exposed login credentials to anyone with a Google search bar—as one defect that caused them to close Performance Labs. (Doc. 94 at 8.)

In reply, Defendant argues that Plaintiffs have produced no evidence that they were actually harmed in any way by the Merge LIS Software because they cannot show that the Merge LIS Software caused the Plaintiffs (1) any data or cybersecurity breaches; (2) inaccurate results; (3) to fail any regulatory inspections; or (4) to lose any accounts/customers. (Doc. 103 at 1.) Defendant reasserts that any lost-profit calculation is speculative given the obstacles in restarting the business venture after Performance Lab's regulatory sanctions. (*Id.* at 5.)

b. Law governing

Louisiana law allows a plaintiff to recover lost profit damages that are "proven with reasonable certainty and [are not] based on conjecture and speculation." *In re Liljeberg Enterprises, Inc.,* 304 F.3d 410, 448 (5th Cir. 2002) (internal citations omitted); *see A & W Sheet Metal, Inc. v. Berg Mech., Inc.*, 26,799 (La. App. 2 Cir. 4/5/95); 653 So. 2d 158, 163 ("Damages for the breach of a contract are measured by the loss sustained by the obligee and the profit of which he has been deprived. LSA–C.C. Art. 1995."). As such, "the plaintiff must show that the loss of profits is more probable than not [and] [a] lost profits claim will not be supported by mere estimates of loss." *Grand Acadian, Inc. v. Fluor Corp.*, No. 07-295, 2010 WL 1053701, at *2 (W.D. La. Mar. 22, 2010) (internal citations omitted).

In calculating the lost profits claim, courts have explained,

Although a perfect measure of damages is not required, mere speculation or conjecture is insufficient and the damaged party must provide evidence for a reasonably accurate estimate of the amount of damages such that it appears reasonably evident that the amount allowed rests upon a certain basis. Claims for lost profits cannot rest solely on the testimony of the injured party without being substantiated by other evidence.

*Towing & Recovery Prof'l of Louisiana Tr. v. Swift Transp. Co.*, No. 08-1685, 2009 WL

1605150, at *2 (E.D. La. June 8, 2009)(internal citations and quotations omitted). As the

Louisiana Court of Appeals maintains,

> [The] uncorroborated testimony by the plaintiff alone insufficiently proves any special damages by reason of loss of income and therefore such award must be disallowed. As was stated in *Jenkins v. Audubon Insurance Co.*, La. App. 1 Cir., 110 So. 2d 221, 225, '. . . this court has also repeatedly held that an uncorroborated general estimate by a plaintiff as to his loss of earnings or profits is not sufficient proof of such loss, where corroborative evidence is shown to be available and is not produced.'

*Jobe v. Credeur*, 125 So. 2d 487, 489 (La. Ct. App. 1960).

For example, a calculation of lost profits was too speculative where a plaintiff sought lost

profit damages from a defendant who contracted to do construction and

> [t]he project was planned, part of the real estate was purchased, and the plaintiff had an option to purchase additional real estate. However, at the time of loss, construction had not yet begun and plaintiff had received no financing for the project. The court rejected the plaintiff's claim for lost profits, concluding that the evidence was too speculative because the project may not have been completed, or if it was completed, it may not have been profitable.

*Grand Acadian, Inc. v. Fluor Corp.*, No. 07-295, 2010 WL 1053701, at *3 (W.D. La. Mar. 22,

2010)(citing *Schwamb v. Delta Airlines*, Inc., 516 So. 2d 452 (La. Ct. App.. 1987)). However, if

a plaintiff can produce evidence that proves the damages to a reasonable certainty, then "[t]he

fact that a business is new alone will not preclude an award for future lost profits." *Mac Sales,*

*Inc. v. E.I. Du Pont De Nemours & Co.*, No. 89-4571, 1996 WL 109289, at *4 (E.D. La. Mar. 8,

1996).

c.  <u>Analysis</u>

The Court denies summary judgment on the issue of lost-profit damages. Plaintiffs' claim

for lost-profit damages is not too speculative or based on pure conjecture, such that the Court can

conclude that these damages are unavailable as a matter of law. Defendant rightly argues that due

to regulatory sanctions, Performance Labs had to start over from ground zero in their operations. However, Louisiana law allows a plaintiff to recover for a new business where lost profits are proved with reasonable certainty. *Mac Sales,* , 1996 WL 109289, at *4. The cases cited by Defendant do not hold otherwise.

Specifically, questions of fact remain as to (1) whether there were defects in the Merge LIS Software and (2) whether those defects impeded Performance Labs from restarting operations and progressing with testing. It is true that Plaintiffs lost-profit damages are based on their profits in 2015, prior to the regulatory sanctions. It is undisputed that the regulatory sanctions resulted in fewer employees and less equipment at Performance Labs. However, a reasonable factfinder could conclude that once the regulatory sanctions were lifted, Performance Labs had a profitable business model except for the alleged defects with the Merge LIS Software. A reasonable fact finder could also conclude that because Performance Labs had to restart their business, gain new clients, and become profitable while facing a default on their business loan meant that there was no way for Performance Labs to be profitable regardless of any alleged defect with the Merge LIS Software. The answer to these questions remains the duty of the jury as there is sufficient evidence to create a genuine dispute of material fact. The Court therefore DENIES the *Lost Profits Motion*.

## V.     Misrepresentation Motion

### a.  Parties' arguments

Defendant argues that summary judgment is appropriate on the issue of misrepresentation and omission claims (Counts II, IV, and V) because: (1) Plaintiffs cannot show that the alleged misrepresentations or omissions induced Trinity to purchase the Merge LIS Software; (2) there is no evidence that Merge misrepresented any information prior to Trinity's purchase; (3) Trinity admitted that Merge's marketing materials did not influence the decision to purchase the Merge

LIS Software; and (4) Merge had no duty to disclose the existence of the rare and irrelevant "duplicate container defect." (Doc. 78-1 at 9-14.) In addition, Merge maintains that because the fraudulent misrepresentation and omission allegations are baseless, the Court should grant summary judgment on the claims pursuant to the Louisiana Unfair Trade Practices Act. (*Id.* at 18-19.)

Defendant maintains that evidence shows that any alleged misrepresentation or omission did not induce Plaintiffs' consent to the contract because the testimony from Chad Howell—the Chief Information Officer—states that he did not rely on the marketing materials or the conversation with the salesperson when deciding to use the Merge LIS Software. (Doc. 78-1 at 10.) Defendants argue that Plaintiffs cannot show justifiable reliance because of the same testimony of Chad Howell. (Doc. 78-1 at 9, (citing *Sys. Eng'g & Sec., Inc. v. Sci & Eng'g Ass'ns*, 06-0974 (La. App. 4 Cir. 6/20/07); 962 So. 2d 1089, 1092.)

Defendant also argues that the alleged misrepresentations cannot form the basis of a fraud or negligent misrepresentation claim because (1) most of the alleged misrepresentations took place after the Sale Order was executed; (2) the alleged misrepresentations from the November 18-19, 2015 communications are too general and merely promotional puffery; and (3) all statements made were true and not made with the intent to defraud. (Doc. 78-1 at 12-13.)

In support of its argument that it did not have a duty to disclose the rare duplicate container issue, Defendant argues that to prove a claim for negligent omission, there must be a legal duty to disclose the truthful information, which does not arise in an "ordinary supplier-customer contracts." (Doc. 78-1 at 15 (citing *VFS US LLC v. Vaczilla Trucking LLC*, No. 15-02226, 2016 WL 3655908, at *2 (E.D. La. July 8, 2016).) Defendant also asserts that "Negligent misrepresentation is typically employed to remedy damages caused to a non-contracting party by

17

a breach of contract and not between two contracting parties." (Doc. 78-1 at 15, (quoting *Miller v. Lowe*, 2009 WL 4730201, at \*5 (W.D. La. Dec. 4, 2009)).) Defendant likewise maintains that Louisiana's duty to disclose when there is "a known danger, where one knows that other is relying on the appearance of safety" does not apply because the Duplicate Container Defect was corrected and the version installed at Performance Labs did not contain the defect. (Doc. 78-1 at 16 (citing *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383-84 (La. 1990)).)

Defendant also urges the Court to reject Plaintiffs' claim that the duty to disclose arose because of a partial disclosure that conveyed a false impression. (Doc. 78-1 at 17.) Defendant argues that while such duty may exist, it did not arise in this case because Plaintiffs cannot point to a false statement that was made to create a false impression. (*Id.*)

Last, Defendant argues that because Plaintiffs' fraudulent misrepresentation and omission allegations are baseless, the Plaintiffs' LUTPA claims should also be dismissed. (Doc. 78-1 at 18.) Defendant states that a LUTPA claim depends on the showing that a defendant engaged in conduct that "offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." (Doc. 78-1 at 19 (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod. Inc,*, 09-1633 (La. 4/23/10); 35 So. 3d 1053, 1059 ).) Therefore, Defendant argues because the claims for fraud fail, the claim under LUTPA likewise fails.

In response, Plaintiffs argue that summary judgment is not appropriate because there are genuine disputes of material facts regarding whether Merge's material misrepresentations and omissions caused Trinity to purchase and install the Merge LIS Software. (Doc. 90 at 8.)

Specifically, Plaintiffs point to the representations of Merge that the Merge LIS Software was marketed as FDA approved, federally certified electronic health record technology that was purchased by IBM/Watson Health in 2015 for $1 billion. (Doc. 90 at 4.) Further, they state that

Merge's sales representatives—Ron Poe and Dianna Powell—misrepresented in writing that the Merge LIS Software maintains the "highest standards for security, including usernames and passwords, industry standard hardware security, encryption of all patient data transmitted, SSL certificates for Internet access and audit logging." (Doc. 90 at 4.) Plaintiffs also argue that the misrepresentations included verbal statements that the Merge LIS Software accurately calculated quality control, tracked manual quality control adjustments, was FDA compliant and presented more accurate information because of the association with IBM. (Doc. 90 at 5.)

As to omissions, Plaintiffs argue that material information was omitted from the sales pitch, specifically, the history of defects and recalls, the backlog of customer complaints, and known security defects in the Merge LIS Software. (Doc. 90 at 5.) Plaintiffs maintain that Merge should have informed them of the Duplicate Container Defect that prompted a national recall in January 2016, and the Trojan Horse Defect, which Plaintiffs argue made HIPAA compliance impossible and caused Performance to shut down. (Doc. 90 at 6-7.)

Plaintiffs also maintain that Chad Howell was not the sole decision maker on the purchase of the Merge LIS Software because it was a collective decision that ultimately rested with Blake Bourque. Blake Bourque testified that he thought Merge was "hit[ting] the easy button" and a "sure shot." (Doc. 90 at 6.) These facts, Plaintiffs argue, show a genuine dispute of material facts as to whether the Plaintiffs were induced into the Sales Order and justifiably relied on the misrepresentations. As to whether there were partial disclosures that prompted a duty to disclose, Plaintiffs point to the Court's *Ruling and Order* on the *Second Motion to Dismiss* that explained, "Merge, by partially disclosing incorrect information, created a duty to provide Plaintiffs with the correct information, including, any defects in Merge LIS." (Doc. 90 at 10 (citing Doc. 75 at 18).)

In reply, Defendant argues that Plaintiffs now rely on new purported misrepresentations and omissions not alleged in the Second Amended Petition and are barred by the Plaintiffs' stipulation in a hearing with Judge Wilder-Doomes that the only misrepresentations and omissions at issue are those in the Second Amended Petition. (Doc. 104 at 2 (citing Doc. 78-13 at 25).) Further, Defendant asserts that the newly alleged misrepresentations are hearsay evidence that the Court should not consider at summary judgment. (*Id.*) Finally, Defendant argues that Plaintiffs have no evidence of fraudulent intent as necessary to prove fraud under LUTPA. (*Id.* at 5.)

b. Law governing

In determining whether a defendant acted fraudulently, a plaintiff must prove the following elements:

> (1) a misrepresentation, (2) an intent to obtain an unjust advantage or to cause damage or inconvenience to another, and (3) the error induced by a fraudulent act must relate to a circumstances substantially influencing the victim's consent to the contract.

*Shelton v. Standard/700 Associates*, 01-0587 (La. 10/16/01); 798 So. 2d 60, 64. In determining whether a defendant acted negligently, Louisiana uses a duty-risk analysis. *See Baxter v. Anderson*, 277 F. Supp. 3d 860, 864 (M.D. La. 2017) (deGravelles, J.). To succeed on a claim under Louisiana's duty-risk analysis, this Court has stated that the plaintiff is required to show:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages.

*Id*. (quoting *Christy v. McCalla*, 11-366 (La. 12/6/11); 79 So. 3d 293, 299).

For a plaintiff to prove a claim for negligent misrepresentation, the Fifth Circuit has articulated the following test:

> (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.

*Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (citing *Brown v. Forest Oil Corp.*, 29 F.3d 966, 969 (5th Cir. 1994)). The duty of the defendant to supply correct information does not immediately arise. "In Louisiana, '[a]lthough a party may keep absolute silence and violate no rule of law or equity,…if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth.' " *Id.* at 419 (quoting *Am. Guar. Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 914, 23 So. 2d 409, 455-56 (1945)). Further, "Louisiana courts have held that even when there is no initial duty to disclose information, 'once [a party] volunteer[s] information, it assume[s] a duty to insure that the information volunteered [is] correct.' " *Id.* (quoting *Pastor v. Lafayette Bldg. Ass'n*, 567 So. 2d 793, 796 (La. Ct. App. 1990)).

This Court has previously articulated the analysis for LUPTA:

> LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). "Because of the broad sweep of this language, Louisiana courts determine what a LUTPA violation is on a case-by-case basis." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582 (La. 5/7/14); 144 So. 3d 1011, 1025. The Louisiana Supreme Court has consistently held that, in establishing a LUTPA claim, plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* Further, "the range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." *Id.*

*J&J Sports Prods., Inc. v. Tienda y Taqueiria "La Frontera," LLC*, No. 16-568, 2017 WL 3166734, at *13 (M.D. La. July 25, 2017). Additionally, "[t]he 'defendant's motivation' is a critical factor—his 'actions must have been taken with the specific purpose of harming the competition.' " *IberiaBank v. Broussard*, 907 F.3d 826, 839-40 (5th Cir. 2018) (quoting *Monroe*

*v. McDaniel*, 16-214 (La. App. 5 Cir. 12/7/16); 207 So. 3d 1172, 1180).

c. Analysis

The Court denies summary judgment on the *Misrepresentation Motion* because questions

of facts exist as to the intent of the parties, the inducement of the misrepresentations and the

justifiable reliance of Plaintiffs on Defendant's representations and omissions.[4] These questions

of fact pervade whether the Plaintiffs can recover for fraud, negligent misrepresentation, and

under LUTPA. For example, Plaintiffs' evidence that Defendant's written representations

regarding the safety and security of the Merge LIS Software led Plaintiffs to conclude that Merge

was the obvious choice for software is sufficient to create a triable issue of fact on the

inducement into the Sales Order and the justifiable reliance of the Plaintiffs on those

representations. Because these pervasive questions of fact exist, the Court denies the

*Misrepresentation Motion*.

Further, the Court rejects Defendant's argument that as a matter of law it did not have a

duty to supplement the partial disclosure. Defendant has produced evidence to show that the

Duplicate Container Defect was fixed in the Merge LIS Software sold to Plaintiffs. However,

this evidence does not change the Court's analysis that a duty to disclose the correct information

was created by Merge when it touted the reliability and performance of the product while not

mentioning known defects. The Court ruled on Defendant's *Second Motion to Dismiss* that

> Merge, through its partial disclosures, had a legal duty to supply Plaintiffs with
> accurate information and that Plaintiffs, through installation and use of Merge
> LIS[TM], relied on Merge's alleged misrepresentations. Again, the duty to disclose
> information does not automatically exist in Louisiana. *Kadlec Med. Ctr.*, 527 F.3d
> at 419. However, a partial disclosure of information gives rise to the duty to provide
> correct information. *Id*. Plaintiffs have set out in detail several alleged defects in
> LIS[TM] including (but not limited to): "the duplicate container defect," "lack of audit
> tracking defect," "user manual defect," "illegible comments defect," "incorrect

---

[4] As discussed above, whether the Plaintiffs can rely on the misrepresentations and omissions not alleged in the
Second Amended Petition will determine the parameters of the fraud/misrepresentation claims.

sample date defect," "no rejected samples defect," "re-preparation sample limbo defect," "no disabled users defect," "rejected report defect," and "back-dating defect." (*SAP* ¶ 76, Doc. 38.) Plaintiffs' allegations center on the Duplicate Container Defect in that they allege Merge knew about this particular defect during or around March 2015. (*Id*. at ¶ 51.) Further, Plaintiffs detail multiple emails, phone conversation, and "web demos" in which Merge touted the reliability and performance of its product while failing to mention the Duplicate Container Defect. (*Id*. at ¶¶ 36-49, 56.) Thus, Merge, by partially disclosing incorrect information, created a duty to provide Plaintiffs with the correct information, including, any defects in Merge LIS™.

(Doc. 75 at 17-18.) The Court's ruling remains the law of the case and will not be reversed at summary judgment. Ultimately, because genuine disputes of material facts pervade the claims for fraud, negligent misrepresentation, and under LUTPA, the Court will deny summary judgment on the *Misrepresentation Motion*.

## VI. Limitation of Liability Motion

a. Parties' arguments

Defendant argues that it is entitled to summary judgment on the enforcement of the contractual limitation of liability clauses, which restrict Merge's liability to the amount paid for the Merge LIS Software. (Doc. 79 at 1.) Merge asserts that paragraph 9 of the Sales Order is an unequivocal and conspicuous limitation of liability clause that states:

> 9.1 Types of Damages. UNDER NO CIRCUMSTANCES SHALL MERGE, ITS SUPPLIERS, OR ANY RELATED PARTY BE LIABLE OR RESPONSIBLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR DAMAGES ATTRIBUTABLE TO LOSS OF USE OR AVAILABILITY OF DATA, LOST PROFITS OR LOST GOODWILL, WHICH CUSTOMER MAY INCUR, EXPERIENCE, OR CLAIM AND WHETHER FORESEEABLE OR UNFORESEEABLE, ARISING OUT OF ANY BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT, EVEN IF MERGE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

> 9.2 Amount of Damages. IN NO EVENT WILL MERGE'S AGGREGATE, CUMULATIVE MONETARY LIABILITY ARISING FROM OR RELATED TO

THIS AGREEMENT, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY (INCLUDING STRICT LIABILITY AND NEGLIGENCE), EXCEED THE TOTAL FEES RECEIVED BY MERGE UNDER THIS SALES ORDER.

(Doc. 79-1 at 3-4.)

Defendant asserts that Clause 9.1-Types of Damages prohibits any damages for lost profits. (*Id.* at 5.) Further, Merge maintains that the Clause 9.2- Amount of Damages, limits the damages alleged in the Second Amended Petition for "(i) rescission of sale and recovery of all costs incurred as a result of purchasing the Merge LIS Software, (ii) all damages plaintiffs incurred, whether foreseeable or unforeseeable, (iii) attorneys' fees, and (iv) treble damages" to the total fees received under the Sales Order. (*Id.* at 4.)

In response, Plaintiffs argue that Defendant is not entitled to summary judgment on the enforcement of the contractual limitation of liability provisions because genuine disputes of material fact exist as to whether Plaintiffs are entitled to rescission of the Sales Order for fraud, which Plaintiffs maintain vitiates their consent to the Sales Order. (Doc. 93 at 8.) Further, Plaintiffs argue that Merge cannot enforce a limitation of liability clause for its intentional and grossly negligent acts. (*Id.* at 9-10.) Likewise, Plaintiffs argue that Defendant's actions meet the exception to the enforceability standard due to gross negligence because they argue that the defects are an "extreme departure from ordinary care." (Doc. 93 at 10.)

In reply, Defendant states that there is no evidence that Merge made a material misrepresentation or omission such that the Sales Order can be rescinded. (Doc. 105 at 2.) Merge also argues that there is no evidence of a grossly negligent or intentional act as required to vitiate the contract's limitation of liability clause. (Doc. 105 at 3.)

b. Law governing

Louisiana law is "well settled . . . that limitation of liability clauses . . . are valid and not against public policy." *Bonfiglio v. Bellsouth Advert. & Pub. Corp.*, 619 So. 2d 135, 136 (La. Ct. App.), *writ denied,* 620 So. 2d 864 (La. 1993). In determining if the contractual limitation of liability is valid, courts in Louisiana apply general principals of contract interpretation. The Louisiana Supreme Court has instructed:

> [c]ontracts have the effect of law for the parties and the [i]nterpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

*Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13); 112 So. 3d 187, 192.

Although contractual limitations on liability are generally enforceable, there are exceptions under Louisiana law. The exceptions include that

> "[a] clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." La. Civ. Code art. 2004. This provision has been applied to invalidate limitations on liability in contracts between commercial parties where a breach of warranty allegedly entailing gross negligence resulted in property damage and consequential damages. *See Occidental Chemical Corp. v. Elliott Turbomachinery Co., Inc.,* 84 F.3d 172 (5th Cir. 1995). Louisiana courts have also refused to enforce contractual

limitations of liability where the breaching party's conduct amounted to "a deliberate disregard of a contractual duty." *See Carriage Meat Co., Inc. v. Honeywell, Inc.,* 442 So. 2d 796, 798 (La. Ct. App. 4th Cir. 1983); *see also G. C.P. Telephone Cards LLC v. ADT Security Services, Inc.,* 2011 WL 2118732 (E.D. La. 2011) (McNamara, J.).

*SeaTrepid Int'l, LLC v. MK Salvage Venture, LLC*, No. 13-51, 2013 WL 4012655, at *2 (E.D. La. Aug. 5, 2013). Therefore, "it is not the case that the waiver clause is *per se* enforceable regardless of what facts are established concerning liability." *Id.* Courts at summary judgment commonly hold that absent an applicable exception, such as a showing of gross negligence, contractual limitation of liability clauses are enforceable.

Gross negligence, under Louisiana law, is defined as,

willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence. Gross negligence is substantially and appreciable higher in magnitude than ordinary negligence. At least one Louisiana court has stated that one is grossly negligent when he "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Mere inadvertence or honest mistake does not amount to gross negligence.

*Menard v. Orkin, LLC*, No. 17-0019, 2018 WL 5019960, at *4 (W.D. La. Oct. 16, 2018)(internal citations omitted). Courts are reluctant to determine gross negligence at summary judgment because it "generally requires a detailed factual[] inquiry" and may depend on "credibility determinations." *Fraiche v. Sonitrol of Baton Rouge*, No. 08-392, 2011 WL 576868, at *2 (M.D. La. Feb. 9, 2011); *see Mt. Hawley Ins. Co. v. ADT Sec. Sys., Inc.,*02-298 (La. App. 5 Cir. 10/29/02); 831 So.2d 480, 483; *see also Martco Ltd. P'Ship v. Wellons,* Inc., 2006 WL 845597, at *3 (W.D. La. Mar. 29, 06) ("[A] finding that a party is negligent or grossly negligent is a finding of fact."); *Godfrey v. Boston Old Colony Ins. Co.,*97-2569 (La. App. 4 Cir. 5/27/90);718 So. 2d 455, 459–60 (stating that questions of fact regarding the reasonableness of a party's behavior preclude summary judgment); *but see Orthopedic & Sports Injury Clinic v. Wang*

*Labs.*, Inc., 922 F.2d 220, 225 (5th Cir. 1991) (explaining that a district court properly granted summary judgment when the only evidence on gross negligence was an inadmissible expert testimony)(citing *Haspel v. Rollins Protective Serv., Inc.*, 490 So. 2d 530, 533 (La. App. Ct. 1986)(affirming summary judgment on willful or wanton negligence because contract's limitation of liability clause was clear and because insufficient evidence of negligence was presented).).

When faced with a question of material fact as to whether an exception to the enforceability of a contractual limitation of liability clause applies, Judge Brady held "that the limitation of liability provisions in the Client Agreement shall be enforceable absent a future finding by this Court of gross negligence. At this juncture, the Court finds that it is too early to rule on the issue of gross negligence." *Fraiche v. Sonitrol of Baton Rouge*, No. 08-392, 2009 WL 10679386, at *5 (M.D. La. Feb. 17, 2009). This approach is consistent with the approach in *Martco Ltd. P'ship v. Wellons, Inc.*, No. 04-673, 2007 WL 4124490, at *4–5 (W.D. La. Nov. 19, 2007). In *Martco*, the court allowed the questions of gross negligence, rescission for fraud and redhibition to go to the jury. *Id.* The jury determined that the contracts should not be rescinded on the basis of error; therefore, the court held

> these contracts continue to operate as the law between the parties. As such, we find that plaintiff's recovery in this case is necessarily dictated by the limitation of liability clause contained in these contracts, which reads as follows: *LIMITATION OF LIABILITY* 1. SELLER AND PURCHASER EXPRESSLY AGREE THAT SELLER SHALL NOT IN ANY EVENT BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES. THE LIABILITY OF [DEFENDANT] ON ANY CLAM OF ANY KIND, INCLUDED NEGLIGENCE, SHALL IN NO CASE EXCEED TWENTY-FIVE PERCENT (25%) OF THE PRICE PAID BY THE PURCHASER FOR THE EQUIPMENT.

*Id.*

c. <u>Analysis</u>

The Court will deny the *Limitation of Liability Motion* without prejudice to re-urging at trial that damages should be limited under the terms of the Sales Order. In deferring the decision on the enforceability of the limitation of liability clause, the Court holds that if the jury does not find gross negligence or allow for rescission of the contract for fraud, then the contractual limitation of liability clause will apply. It is inappropriate for the Court to enforce this contractual provision at summary judgment because there are questions of fact that remain regarding the Plaintiffs' claims for fraud and gross negligence. However, in the event that the exceptions do not apply, the contractual limitation of liability is not barred as a matter of law and is enforceable to bar any award for lost profits and limit Plaintiffs' recovery to what Trinity paid under the Sales Order.

**VII.    Prestige Motion**

a. <u>Parties' arguments</u>

Last, Defendant argues that it is entitled to summary judgment on all claims by Plaintiff Prestige because Prestige cannot prove that it suffered any damages and/or cannot prove that it suffered any damages caused by Merge. (Doc. 80-1 at 1.) Defendant sets out that Prestige's remaining claims are for negligence, negligent misrepresentation, and violation of LUTPA, each of which requires a showing of causation and damages. (*Id.* at 3-4.) Defendant argues that Prestige's claims should be dismissed with prejudice because there is no quantified showing of damages to Prestige whatsoever. (*Id.* at 4.)

In response, Plaintiffs argue the existence of written management and consulting contracts between Prestige and Performance Labs as well as Prestige and the non-Plaintiff related entity, Pathway. (Doc. 92 at 3.) These lost contracts, Plaintiffs reason, are damages attributable to Merge and create a genuine dispute of material fact as to whether Prestige suffered

damages because Performance Labs and Pathway could not use the Merge LIS Software.  (*Id.* at 4.)

b. Law governing

Claims for negligence, negligent misrepresentation and under LUTPA, require a plaintiff to show actual damages that were caused by the defendant's conduct. As explained above, in determining whether a defendant acted negligently, Louisiana uses a duty-risk analysis. *See Baxter v. Anderson*, 277 F. Supp. 3d 860, 864 (M.D. La. 2017) (deGravelles, J.). To succeed on a claim under Louisiana's duty-risk analysis, a plaintiff is required to show:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) *actual damages*.

*Id.* (quoting *Christy v. McCalla*, 11-366 (La. 12/6/11); 79 So. 3d 293, 299 (emphasis added)).

For a plaintiff to prove a claim for negligent misrepresentation, the Fifth Circuit has articulated the following test:

> (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) *the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.*

*Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008) (citing *Brown v. Forest Oil Corp*., 29 F.3d 966, 969 (5th Cir. 1994) (emphasis added)).

Similarly, the private right of action under LUPTA states:

> Any person who suffers *any ascertainable loss of money or movable property, corporeal or incorporeal*, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

La. R.S § 51:1409 (emphasis added); *see Hamilton v. Bus. Partners, Inc.*, 938 F. Supp. 370, 371 (E.D. La. 1996).

c. Analysis

The Court will deny summary judgment on the *Prestige Motion* because there is evidence that creates a question of fact as to whether Prestige lost contracts with Performance Labs when it closed. If a jury finds that the alleged defects in the Merge LIS Software were the cause of Performance Labs failure, then a reasonable jury could likewise find that but for Performance Labs' failure, Prestige would continue to provide staffing at Performance Labs. Therefore, a reasonable jury could find that Prestige suffered damages in the amount of the lost contracts for staffing at Performance. As questions of fact remain as to Prestige's damages and whether they were caused by Merge's conduct, summary judgment is not appropriate, and the Court will deny the *Prestige Motion*.

CONCLUSION

IT IS ORDERED that

1. *Merge Healthcare Solutions, Inc.'s Motion to Strike Plaintiffs' Appendix I* (Doc. 112) is DENIED WITHOUT PREJUDICE.

2. *Motion for Summary Judgment on Lost Profits* (Doc. 77) is DENIED.

3. *Motion for Summary Judgment on Misrepresentation and Omission Claims* (Doc. 78) is DENIED.

4. *Motion for Summary Judgment Seeking Enforcement of Contractual Limitation of Liability Clauses* (Doc. 79) is DENIED WITHOUT PREJUDICE.

5. *Motion for Summary Judgement on Claims by Prestige Worldwide* (Doc. 80) is DENIED.

Signed in Baton Rouge, Louisiana, on January 8, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**